CITY OF EVANSVILLE ET AL. *v.* LEHMAN.

[No. 20,252. Filed October 14, 1965. Rehearing denied December 1, 1965. Transfer denied April 12, 1966.]

588

*Jerome L. Salm, Robert S. Matthews* and *George C. Barnett,* of Evansville, for appellant, City of Evansville. *Donald R. Raiser* and *Bamberger, Foreman, Oswald and Hahn,* of Evansville, for appellant, Whirlpool Corporation.

*Rice & Vanstone* and *McCray, Clark, Statham & McCray,* of Evansville, for appellee.

MOTE, J.—This appeal comes to us from a judgment rendered on a jury verdict in the Pike Circuit Court, with the Honorable Lester Nixon, the regular judge thereof, presiding.

The case had been venued to that court from Vanderburgh County. The issues in the trial court were formed by the complaint and amended answer in two paragraphs filed by appellant Whirlpool Corporation; the first under Rule 1-3, and the second in which it was alleged that appellee (plaintiff below) was negligent in the operation of the motor vehicle under his command; that he was guilty of contributory negligence; and that said appellant, Whirlpool Corporation, had no liability; and the City of Evansville answered in two paragraphs, the first paragraph being under Rule 1-3 of the Supreme Court, and the second paragraph affirmatively alleged that appellee was guilty of contributory negligence in that he was operating the said vehicle at a speed between thirty-five (35) and forty-five (45) miles per hour. Plaintiff-appellee filed a reply under Rule 1-3 to the second paragraph of answer of the City of Evansville and a similar reply to the second paragraph of amended answer of Whirlpool Corporation.

Henceforth in this opinion we shall refer to the appellant Whirlpool Corporation as "Whirlpool" and to appellant City of Evansville as "Evansville" or "City."

Appellee submitted some sixty-six (66) interrogatories, one or two of which later were amended and answered by Whirlpool under oath.

Appellee also submitted to both appellants eleven (11) interrogatories, at least one of which later was amended, in approximately one hundred and one (101) different parts. Answers thereto appear to have been settled and made.

Appellee sought and recovered judgment against both appellants in the sum of Thirty Thousand, Five Hundred ($30,500.00) Dollars, for personal injuries which he sustained as a result of the collision of the truck-trailer combination then being operated by him with a stake-bed truck owned by C. & E. I. Railroad which was halted in a line of traffic in the east bound lane west of a semaphore designating a

"Stop" at the intersection of Diamond Avenue in Evansville, Indiana, with U. S. Highway No. 41. The angle of the intersection at the northwest quadrant is a bit more than ninety (90) degrees.

Appellee had approached the intersection with his combination vehicle from a northerly direction and drove into the right turn lane and, even though a green direction arrow would have permitted him to proceed and turn right onto Diamond Avenue, he was forced to stop because of a halted vehicle ahead of him in the right turn lane, alongside a truck likewise halted in the lane of traffic on said U. S. Highway No. 41. The events which then occurred are set forth in the following testimony:

"Q. What next occurred?

A. When the light changed for traffic going south, the station wagon proceeded across to go south and I proceeded to make my right turn.

Q. And that would have been on the Diamond Avenue?

A. Yes, sir.

Q. What next occurred?

A. As I started to make my turn, when I got up to where I could begin to turn I noticed there was water flowing across the surface of Diamond Avenue into a culvert on the right, and I proceeded into the water and I got, I don't know how many feet up on to Diamond Avenue and my right wheel hit a hole and when it did it jerked my steering wheel to the right, and I didn't know there was ice underneath the water and I began to slide and as quick as I could I began to straighten up and I was in a jacknife and I thought I could straighten if I hit my trailer brakes, I got it straightened up but I was still sliding, I had the whole outfit on the ice and I was sliding into a line of automobiles . . ."

The aforesaid C. & E. I. truck was halted in a long line of traffic and to the rear of three or four other vehicles lined up at the stop sign in the aforesaid intersection, and it appears that appellee, knowing that a collision with a vehicle halted in the east-bound line of traffic on Diamond Avenue was im-.

minent, and in order to avoid colliding with a passenger vehicle, attempted to drive and propel his combination vehicle in such manner as to strike the said C. & E. I. truck in a manner designed to glance therefrom and, in doing so, the cab of appellee's tractor struck the C. & E. I. stake-bed truck at the left front corner thereof and parts and members of the stake-bed truck smashed into appellee's cab, thus causing personal injuries to him, as alleged in the complaint, and proximately caused by the acts of negligence, likewise alleged in rhetorical paragraph 10 thereof, as follows:

"10. That the aforesaid collision and the injuries the plaintiff sustained as a result therefrom, were caused solely and as a direct and proximate result of the negligence of defendants, and each of them, in this, to-wit:

(a) The defendants, and each of them, carelessly and negligently failed to maintain the aforesaid sewer in a proper and safe condition.

(b) The defendants, and each of them, carelessly and negligently failed to repair said sewer within a reasonable time after they knew, or should have known, that it had broken.

(c) The defendants, and each of them, carelessly and negligently permitted said Diamond Avenue to become defective and unsafe and dangerous to vehicular traffic.

(d) The defendants, and each of them, carelessly and negligently failed to provide any warning to vehicular traffic of the dangerous, slippery and unsafe condition of said Diamond Avenue.

(e) The defendants, and each of them, carelessly and negligently failed to use reasonable care to inspect said sewer line."

The evidence given in the cause, together with the legal effect thereof, including the natural, legitimate inferences properly to be drawn, seem to indicate that on or before February 7, 1961, a forced main 10 inch sewer line along the north berm of Diamond Avenue, a city street in the City of Evansville, broke open between connections, thus permitting sewer water or fluid to be spread over the north side

of Diamond Avenue. Except for a few feet west of the pavement on U. S. Highway No. 41 where there was a decline in the pavement on Diamond Avenue, the pavement west therefrom on said Diamond Avenue inclined to the west for a "good city block" and because of the freezing, or near freezing temperature this sewage fluid, at times at least, was frozen. This condition was noticed by several persons, according to the testimony favorable to appellee, from February 7th to February 16th. As an example, on the morning of February 7, 1961, a sewage engineer for Evansville, saw the water seeping from the ground onto the pavement, determined it to be sewage water, and by noon of that date he had called the superintendent of plant maintenance of Whirlpool and informed him of the condition. There is a dispute about this call. The superintendent of plant maintenance of Whirlpool was willing only to say that he did not remember it, whereas, the sewage engineer of Evansville made the positive assertion that the call was made.

The hazardous condition of Diamond Avenue remained for several days and no attempt was made to repair the sewer or to shut off the sewage water or fluid being forced through it. This sewage fluid oozing out of the soil and onto the north side of the pavement of said Diamond Avenue, together with the freezing of said fluid on the surface of the said pavement, obviously created an unsafe and dangerous situation for motor vehicular traffic which properly could have been found to require warning to motorists of the dangerous, slippery and unsafe condition which prevailed from on or about February 7, 1961, as aforesaid, for perhaps more than a week and until February 16, 1961, when the sewer was repaired.

The record reveals a very sharp dispute between the parties to this appeal as to the time and occurrence of the break in the sewer, and as to whether or not neither one, or both, of the appellants had notice of the defective situation that obtained, as shown by the evidence. However, as indicated

by the answers to interrogatories propounded to the jury, we must hold that the defective, unsafe and dangerous situation did obtain from and after February 7, 1961, and that appellants herein had notice thereof on the 7th day of February, 1961. Likewise, there is a sharp dispute between the parties to this appeal concerning whether this hazardous condition, as well as the collision which took place under the circumstances herein set forth, occurred on U. S. Highway No. 41 or on Diamond Avenue in the City of Evansville. The jury found in answer to an interrogatory propounded to it that the above mentioned defective, hazardous and unsafe condition obtained on Diamond Avenue and that the collision also occurred on Diamond Avenue in said city. The evidence supports such answer and finding.

The evidence in this case is unrefuted that the sewer referred to herein and from which sewage fluid was oozing to the surface of the ground and flowing onto the north side of Diamond Avenue, is private property and owned exclusively by Whirlpool.

There was introduced in evidence a contract identified as plaintiff's Exhibit No. 6 and, omitting the resolution and signatures, it is as follows:

"AGREEMENT BETWEEN THE BOARD OF COMMISSIONERS OF VANDERBURGH COUNTY, INDIANA, AND REPUBLIC AVIATION CORPORATION, GRANTING RIGHT TO USE CERTAIN PUBLIC HIGHWAYS IN VANDERBURGH COUNTY, INDIANA, FOR PURPOSE OF CONSTRUCTING AND MAINTAINING SEWER THEREUNDER.

THIS AGREEMENT: Made and entered into this 14th day of May, 1942, between the BOARD OF COUNTY COMMISSIONERS OF VANDERBURGH COUNTY, INDIANA, First Party, and REPUBLIC AVIATION CORPORATION, Second Party:

WITNESSETH

The First Party, in consideration of the promise and agreement herein contained, to be kept and performed by

the Second Party, and in consideration of the payment of One Dollar ($1.00) and other valuable consideration, receipt of which is hereby acknowledged, grants unto the Second Party, its successors and assigns, the right to lay, construct and maintain a sewer approximately ten (10) inches in diameter under and along the following street, Highway or public place located in said County, to-wit: Diamond Avenue from the City limits of the City of Evansville, Indiana to the intersection of Kentucky and Diamond Avenues Eastwardly to U. S. Highway #41, then northerly under and along the center of said U. S. Highway #41 to the plant site of the Second Party located on the East side of U. S. Highway #41 South of St. George Road or the Municipal Airport and North of the crossing of the C.C.C. & St. L. R. R. Co., and said U. S. Highway #41.

The location of said sewer is shown upon a map or blue print attached hereto and made a part hereof.

The Second Party agrees that all surface operations in connection with the construction and maintenance of said sewer shall be at all times subject to the supervision and control of the First Party.

The Second Party further agrees that in the construction and maintenance of said sewer it will at all times comply with such orders and directions as shall be made by the First Party concerning the method of the construction and maintenance of said sewer and that it will at all times, in connection therewith, comply with all orders of the First Party, and the Statute of the State of Indiana.

It is agreed between the Parties hereto that upon failure of said Second Party, upon reasonable notice in writing, to comply with any order of the First Party, or other proper department or authority, concerning the maintenance of said sewer, the First Party shall have the right either by appropriate legal proceedings or in any other lawful manner, to declare the rights hereby granted forfeited, and *it* compel the Second Party to remove the said sewer from the said street above described.

This grant is made subject to the full and complete control of the said above described highway by the proper authorities of said County, who shall at any time have the right to regulate the use of said highway and to change the grade thereof as public convenience may require.

And for the same consideration the First Party does hereby also grant unto the Second Party, its successors and assigns, the right to enter upon said area and premises

above described, at all reasonable times for the purpose of inspecting, repairing, removing and maintaining said sewer, subject, however, to the control and supervision of said First Party.

It is agreed by and between the Parties that this franchise or agreement and the rights and liabilities hereunder accruing to and imposed upon the Second Party may be assigned by the Second Party to Defense Plant Corporation, of Washington, D. C."

The record reveals that Whirlpool, by a chain of title, acquired the ownership of the sewer and it is not disputed that it was bound by the obligations therein set forth. It appears to be obvious that at the time of the contract on May 14, 1942, Diamond Avenue was not within the limits of the City of Evansville, but thereafter and before the time involved in this proceeding the said Diamond Avenue and its abutting property around or near the intersection in question was annexed to Evansville.

In an approach to the trial of the action the trial court gave five (5) preliminary instructions. At the conclusion of appellee's evidence Evansville filed a motion for directed verdict and submitted Instruction (A) for the jury to return the verdict for said appellants. This motion and instruction were refused. Also at the conclusion of the evidence Whirlpool filed a motion for directed verdict and requested the giving of peremptory instructions numbered (lettered) C, D, E, F and G. Similar requests were made at the conclusion of all of the evidence and a number of instructions were tendered by each of the appellants for a directed verdict with which were filed instructions for directed verdicts, all of which appear to have been refused. Motions were addressed to the court, requesting that each and every specification of negligence alleged in the complaint should be withdrawn from the consideration of the jury and these were denied by the trial court.

Before the case was submitted to the jury, appellee tendered and requested that twenty-two (22) instructions be

given. Said instructions numbered 1, 5, 8, 16, 17, 18, 20 and 21 were withdrawn. The court refused to give instructions 4, 11, 13 and 19. The court gave instructions tendered by appellee numbered 2, 3, 6, 7, 9, 10, 12, 14, 15 and 22, to all of which except instructions 3, 6, 14 and 15 were objected to by appellant Whirlpool, which objections were overruled.

Evansville tendered and requested the giving of twenty (20) instructions. Instructions 1, 2, 4 and 5 were withdrawn. The court refused instructions 3, 11, 12, 13, 14, 15, 16, 18 and 19. The court gave instructions numbered 6, 7, 8, 9, 10, 17 and 20, and appellee objected to Number 7 and was overruled. Whirlpool tendered and requested the giving of sixty-two (62) instructions. It withdrew instruction Number 52. The court refused to give instructions numbered 5, 12, 20, 22, 29, 32, 40, 43, 46, 49 and 60. The court gave instructions numbered 1 to 4, both inclusive; 6 to 11, both inclusive; 13 to 19, both inclusive; 21; numbered 23 to 28, both inclusive; 30 and 31; numbered 33 to 39, both inclusive; 41 and 42; 44 and 45; 47 and 48; 50 and 51; 53 to 59, both inclusive; and 61 and 62. Appellee objected to the giving of a number of instructions tendered by Whirlpool and given by the court, which objections were overruled and which will not be further noticed. Evansville objected to appellee's instructions numbered 2, 7, 9, 10, 12, 14, 15 and 22, and it likewise objected to instructions tendered by co-appellant, Whirlpool, to-wit: 15, 16, 48, 57, 58, 59 and 61, which objections were overruled by the trial court. We believe we have set forth as succintly as possible the record which will require mention in the balance of this opinion. However, we doubtless will refer to certain other evidentiary matters in our discussion of the asserted errors.

Judgment having been entered on the verdict, Whirlpool duly filed a motion for a new trial containing fifty-three (53) specifications, some of which have numerous parts thereto. Evansville's motion for a new trial contains forty-seven (47) specifications. The trial court overruled both

motions, and each appellant assigns as error the overruling of its said motion.

Appellant Whirlpool divides its argument into Parts I to VIII, both inclusive, and appellant Evansville divides its argument into Parts I to IX, both inclusive. We commend appellee's counsel for its efforts in attempting to answer the contentions of both appellants by grouping said contentions according to the subject matter. Even though the said contentions of both appellants are remarkably similar, in order to maintain certainty of answer this opinion will be devoted first to Whirlpool's assigned errors and then to Evansville's assigned errors, trying to adapt the latter to the former wherever reasonably possible.

Appellant Whirlpool contends that the court erred in refusing to direct a verdict in its favor, that the verdict is not sustained by sufficient evidence, and is contrary to law. Appellant relies upon six (6) different specifications of its motion for new trial in support of its argument, as follow:

1. The verdict of the jury is not sustained by sufficient evidence. (Specification No. 1 of Motion for New Trial)

2. The verdict of the jury is contrary to law. (Specification No. 2 of Motion for New Trial)

3. The court erred in overruling the motion and request of said appellant to give to the jury at the conclusion of the evidence in chief of appellee a peremptory instruction to return a verdict in favor of said appellant. (Specification No. 7 of Motion for New Trial)

4. The court erred in refusing to give to the jury at the conclusion of the evidence in chief of the appellee a peremptory instruction to return a verdict in favor of said appellant, which said instruction was numbered (lettered) A. (Specification No. 8 of Motion for New Trial)

5. The court erred in overruling the motion and request of said appellant to give to the jury at the conclusion of all the evidence a peremptory instruction to return a verdict in favor of said appellant. (Specification No. 19 of Motion for New Trial)

6. The court erred in refusing to give to the jury at the conclusion of all the evidence a peremptory instruction

tendered by said appellant to return a verdict in favor of said appellant, which said instruction was numbered (lettered) B. (Specification No. 20 of Motion for New Trial)

Said appellant then asserts that since the above causes present substantially the same question, they are grouped and supported by one argument in conformity with Rule 2-17 (e) of the Rules of the Supreme Court of Indiana.

Said appellant says that this cause should not have been submitted to the jury; that there is no evidence that appellant knew or should have known of the broken sewer prior to the date of the collision on February 9, 1961; and inasmuch as negligence involves the disregard of some duty to act or not to act, a person cannot be charged with negligence unless it is established that he had actual or constructive knowledge of the facts out of which the duty arises. And it further asserts that it had no actual or constructive knowledge of the broken sewer at the date and time of the accident and therefore had no duty to act or refrain from acting.

Under points 1 to 4, both inclusive, said appellant not only attempts to analyze, criticize and categorize the evidence, but it cites authorities in support of legal principles to form a basis for its conclusion in support of the contentions advanced hereunder. It is clear that the record herein, the evidence and the legitimate natural inferences to be drawn therefrom do not support said appellant's contentions. While it may be admitted, as in any other case which is submitted to a jury, that it might and properly could have found for either appellant, or both of them, there was ample evidence to require the cause to be submitted to the jury, both at the close of appellee's evidence and at the close of all of the evidence, and we further express the view that to have directed a verdict at either time referred to at the request of said appellant, would have been harmful, prejudicial and reversible error. The jury found, as it properly could find under the evidence, that a private sewer, owned by said appellant, broke between

sections, thus permitting sewage liquid or fluid to seep therefrom and ooze onto the top of the soil immediately to the north of the pavement on Diamond Avenue; that it flowed onto the north portion of the pavement on said Diamond Avenue, perhaps freezing and thawing at different times of the day, thus causing a condition which would permit the jury to ascertain and decide that it was dangerous to the public traffic and to appellee particularly. The evidence was such that the jury properly could find that this condition on Diamond Avenue within the city limits of Evansville was made known to it on February 7, 1961, two days before the collision which caused the injuries to appellee.

The record reveals sufficient evidence to find that the collision took place within the limits of the City of Evansville on Diamond Avenue, and that notice of the condition then existing was given, providing ample opportunity to remove the hazardous and perilous conditions. As we have said above and as the jury so found, a sewer engineer of appellant Evansville, Mr. Albert K. Holtz, became aware of the condition on February 7th and on that date, two days before the collision and injuries to appellee, notified Mr. John Heumann of Whirlpool and told him of the condition. It is true that Mr. Heumann did not recall the telephone conversation but stated "it is possible that he called me, sure." There is evidence in the record and inferences therefrom to be drawn which show that several other people became apprised of the sewer break at various dates and times prior to the time of the collision on February 9, 1961, and for that matter, Casey Randolph, a police officer, testified, that on February 9th, at about 3:30 A.M., as follows:

"The water and ice was forming—the ice and water was forming all the way from, I would say it is a good city block, if not more than a city block from the intersection of 41 and Diamond Avenue back up here where the railroad tracks is and there was ice forming along down through here."

The record evidence reveals that officer Randolph told the dispatcher to send someone out to take care of it. Indeed, appellee's Exhibit No. 9 is the record made and referred to by witness Allen Wathen at the time he called the Waterworks Department at 3:45 A.M. on February 9, 1961, about a broken main on Diamond Avenue.

Appellee states that the record evidence reveals the following: "On or before February 7, 1961, a forced main sewer lying under Diamond Avenue, a city street in the City of Evansville, broke, causing sewer water to be spread over the street. The water was tracked for a good city block west of U. S. Highway No. 41 and because of the weather, it froze. This condition was noticed by several persons from February 7th to February 16th.

"On the morning of February 7, 1961, a sewer engineer (Mr. Holtz) for the Appellant City of Evansville saw the water seeping from the pavement, determined it to be sewer water and by noon had called the Superintendent of plant maintenance of the Appellant Whirlpool Corporation and informed him of the condition.

"The hazardous condition on Diamond Avenue remained the same for several days and no attempt was made to repair the sewer, to shut off the sewer water which was causing Diamond Avenue to become defective, unsafe and dangerous to vehicular traffic, or to warn motorists of the dangerous, slippery and unsafe condition until February 16 when the sewer was repaired." By footnotes appellee has cited the transcript pages and lines to support these statements.

Thus we have no hesitancy in concluding that there was evidence to support the answers to interrogatories propounded to the jury: (1) that the sewer leak referred to in the pleadings and in the evidence was not in a highway which was part of the state highway system of the state of Indiana; (2) that there was no sewer leak in a state highway; (3) that the collision referred to in the pleadings and

in the evidence did not occur on any highway which was part of the state highway system of the state of Indiana. Likewise, we have no hesitancy in concluding that there was evidence to sustain the answer to an interrogatory propounded to the jury concerning when the break in the sewer at Diamond Avenue and U. S. Highway No. 41 first was made known to Whirlpool, the answer being "Tuesday, 2-7-1961." This interrogatory was propounded to the jury at the request of Whirlpool.

The record reveals that appellants, one or the other, or both, submitted into evidence some weather records in the vicinity of Evansville for the period involved, implying that at no time was there a freezing temperature. Apparently the jury could have found that there was no freezing temperature, but obviously it did not so find. There is direct evidence in the record to support the proposition that there was freezing and formation of ice on said pavement.

From what we have said it certainly follows that the contentions of Whirlpool cannot receive a favorable answer under this part of the brief.

We next arrive at Part II of said appellant's brief in which it asserts that the trial court erred in refusing to withdraw certain allegations of negligence from the jury. In this, said appellant relies upon specifications of the motion for new trial numbered 1, 2, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30. Apart from the specifications of its motion for a new trial, set forth in Part I of its brief, and in addition to the attack upon certain instructions referred to in said specifications in the motion for new trial, said appellant asserts that all of the instructions referred to above would have withdrawn each charge of negligence against appellant Whirlpool, and since these present substantially the same question, they are grouped and supported by one argument. Very largely, appellant's assertions hereunder are similar to its assertions under Part I. This argument may be answered by reasserting that there was

evidence, both in chief, in answer and in rebuttal, that said appellant did fail to repair and maintain its sewer by permitting the surface of Diamond Avenue to become defective and unsafe, by failing to warn vehicular traffic on Diamond Avenue of the existing condition, and by failing to inspect its sewer line after notice. As above stated, the failure on the part of appellant to maintain the sewer and to fulfill its contract obligation therefor, occurred after it received notice on February 7th, two days before the collision and resulting injuries to appellee. We are not here dealing with the submission of a proposition to the jury on which there was no evidence. It was for the jury to determine whether, after notice received on February 7, 1961, it repaired the sewer within a reasonable time thereafter, and the contentions of appellant to the contrary are merely argumentative and it seems to us that appellant's argument that Evansville had exclusive control over the streets and highways within its corporate limits and cannot delegate the duty to repair and maintain such streets, creates a dilemma on the part of this appellant. It argues both pro and con in this respect. Of course Evansville, as decided by *Wickwire et al* v. *The Town of Angola* (1892), 4 Ind. App. 253, 30 N. E. 917, has the control of streets and sidewalks within its limits and is bound to exercise reasonable care to keep them in a safe condition for travel, and that such liability cannot be delegated or transferred to another. However, we know of no case, and none has been cited, which holds that one situated as this appellant, the owner of the sewer, under its contract, Exhibit 6 above, cannot make itself jointly liable, and jointly liable with Evansville as to some third party, such as appellee. We are not here considering a question of which appellant is liable to appellee. We are considering the joint liability of these appellants. Whether under its contract of ownership and the liabilities assumed under the contract of its predecessor in ownership, it is primarily liable, as between the two appellants, is not for us here to decide. Again, under this part of

its argument, this appellant begs the question because there is evidence which established that said appellant had actual knowledge of the sewer break and it was for the jury to determine, under all the facts and circumstances as shown by evidence and the inferences therefrom to be drawn, whether said appellant was guilty of negligence as alleged in the complaint in respect to the appellee herein. It may be assumed for the purpose of this opinion that this appellant had no duty to make an inspection of its sewer, and it may be further assumed that an inspection would not have revealed a break in the sewer at least until it had notice, as the evidence reveals it did have, and whether or not it acted with care thereafter, or whether or not it was negligent in its failure to take appropriate and necessary steps to correct the situation which the break in its sewer caused, was a matter for the jury to determine.

It must be remembered that there was a break in the sewer, seepage of sewage fluid through the said break, and the oozing of the sewer fluid to the top of the soil on the north side of Diamond Avenue to such extent that it flowed onto the pavement on Diamond Avenue, thereby causing the north side of Diamond Avenue to become dangerous and, as above referred to, created circumstances perilous to the flow of traffic in the westbound lane of said Diamond Avenue. Certainly, the break in the sewer was not the immediate cause of the perilous condition; the freezing and thawing of the sewage fluid, water or liquid flowing onto the pavement was the immediate cause of the hazardous and perilous condition which was dangerous to the traffic flow and to the use of said Diamond Avenue by appellee herein. The jury was entitled to consider this chain of events, as shown by the evidence, and to determine the liability, if any, of these appellants, and whether, after notice as shown by the evidence, they or each of them exercised the due and reasonable care that the law of Indiana may require them to use under such

circumstances. To say that the evidence does not disclose that the sewer pipe was in any wise or respect defective and by reason thereof there was no duty to inspect, simply does not state the true facts. With notice to each of appellants, as the record discloses, the jury was entitled to determine whether or not from the time of such notice, and thereafter, either party had a duty to repair, and whether or not either party acted with ordinary prudence and care in preventing an occurrence such as that encountered by appellee.

In Part III of Whirlpool's brief it attacks the giving of Instruction No. 2, tendered and requested by appellee, relying upon Specification No. 31 of the Motion for New Trial. Said Instruction No. 2 reads as follows:

"It is not required that every material fact upon which the plaintiff bases his cause of action be established by direct and positive evidence in order to entitle him to recover, but it is within the legitimate province of the jury to draw reasonable and natural inferences from the facts and circumstances proved by a fair preponderance of the evidence."

Hereunder, said appellant sets forth its stated objections to the judge of the trial court and then relies upon the first and second objections with Points 1 and 2 in support of the first objection, and Point 1 in support of its second objection. The first objection is as follows:

"1. Instruction No. 2 is erroneous for the reason that it improperly advises the jury with respect to the matter of inferring facts essential to a recovery. While it is not necessary that a fact be proven by direct evidence, it is essential that there be direct evidence supplying a reasonable grounds for the inference of facts essential to a recovery. Instruction No. 2 however, would permit the jury to draw an inference upon an inference because facts and circumstances may be proved by an inference, and, therefore, before the jury can draw reasonable and natural inferences, there must be direct evidence of facts upon which such inferences are to be drawn and, therefore, instruction number 2 is in error."

The second objection is as follows:

"2. Furthermore, the instruction is misleading and confusing and wholly unintelligible for the reason that it does not purport to indicate to the jury what is to be established by way of an inference. The instruction merely says that the jury has the legitimate provisions of drawing reasonable and natural inferences but it does not purport to tell the jury what is to be drawn by way of a reasonable and natural inference and under the law it is only the facts essential to a recovery which may be supplied by inference from the direct evidence upon the subject."

Said appellant does not rely on the third objection expressed in the trial court.

Care must be used to determine whether a proposed instruction contains an erroneous statement of law, whether it is applicable to the issues tendered and the evidence adduced and also, particularly, whether such proposed instruction may tend to mislead the jury. It often has been held by our courts throughout the Nation that in considering the validity of a non-mandatory instruction the court shall consider it in light of all the instructions given for the purpose of ascertaining whether the jury has been fairly and adequately provided with the body of law involved under the issues and evidence, and no single instruction shall be made a whipping post if it can be determined judicially that the jury were fairly and impartially instructed. Not only is this Instruction No. 2, in our opinion, proper and meets the general test as to its validity, but also, said instruction, or one similar to it, was necessary and the objections expressed by this appellant are not well taken. We already have pointed out that this appellant tendered sixty-two (62) instructions, one (1) of which was withdrawn and eleven (11) of which were refused. Thus it appears that forty (40) instructions tendered by this appellant were given by the court. We also have pointed out above that appellee tendered twenty-two (22) instructions, of which eight (8) were with-

drawn and four (4) were refused by the court. It appears then that ten (10) instructions originally tendered by appellee were given, of which this appellant complains of giving these particular instructions, to-wit: Instructions numbered 2, 7, 9, 10, 12 and 22. In fact, this appellant attacks in this appeal the giving of six (6) instructions out of the ten (10) tendered by the appellee and given by the court.

Part IV of this appellant's brief attacks the giving of appellee's Instruction No. 7, relying upon Specification No. 32 of its Motion for New Trial. Said instruction is as follows:

"You are instructed that a corporation acts through its agents, employees, and servants, and is liable for their negligent acts or omissions performed while acting in the scope of their employment and in the line of their duty as such."

In its brief appellant raises the first and second objections thereto, depending upon a single point under each of said objections. The first objection is as follows:

"1. Instruction No. 7 constitutes an abstract proposition of law and is not applied to any specific issues or facts involved in this action and the giving of said instruction constitutes reversible error since there is no attempt to direct the jury's attention to the acts or omissions alleged in plaintiff's complaint."

The second objection is as follows:

"2. Instruction No. 7 is erroneous inasmuch as it does not purport to refer to any acts or omissions charged in plaintiff's complaint and while both defendants are corporations they cannot be held liable for any act or acts of any agent, employee or servant not charged in the complaint and the giving of an abstract statement of law such as is contained in Instruction No. 7 can only serve to confuse the jury.

The other objections appear to have been waived. We regard Instruction No. 7 as merely stating a legal principle which is

applicable to this appeal because this appellant is a private corporation according to the evidence and, as such, can act only through its agents, employees and servants, and such agents, employees and servants are, in fact, the only ones who can create a liability of the corporation for whom they work, *"for their negligent acts or omissions performed while acting in the scope of employment and in the line of duty as such."* This is the law, as we understand it, and this instruction was and is applicable to the case at bar. Further remarks would serve only to lengthen this opinion.

In Part V of said appellant's brief, it questions the giving of Instruction No. 9 tendered and requested by appellee, which is the 33rd Specification of its Motion for New Trial. Said Instruction No. 9 reads as follows:

> "9. In this action the plaintiff, Earl Lehmann, is seeking to recover damages from both the defendant, Whirlpool Corporation, and the defendant, City of Evansville, by charging that each of them committed certain acts of negligence which contributed to cause him injury.
>
> If you find that each of the defendants committed one or more acts of negligence as charged in the complaint, and that such acts of negligence proximately contributed to cause injury to the plaintiff, as charged in the complaint, neither defendant can escape liability to recompense the plaintiff for the injuries thus caused on the ground that the acts of the other also contributed to such injuries or that the damage resulting from his acts alone cannot be apportioned under the evidence."

Appellant sets forth in its brief six (6) different objections and reasons why said Instruction No. 9 was erroneously given, but relies only upon the first and second objections in this appeal. The other four are thereby waived. Its said objections No. 1 and No. 2 are as follows:

> "1. Instruction No. 9, in the first paragraph thereof, erroneously advises the jury that the plaintiff is seeking to recover damages from each defendant on the theory that each of them committed certain acts which contributed to

cause the plaintiff's injury which is contrary to the express allegations of the complaint which charged that each defendant is guilty of certain acts of negligence proximately causing the injuries complained of. The instruction therefore constitutes an erroneous statement of the charges made in plaintiff's complaint and is therefore erroneous in misleading the jury into the belief that the plaintiff is merely charging each defendant with having contributed to the injuries complained of rather than having committed acts which constitute a proximate cause of such injuries.

"2. Instruction No. 9 is erroneous for the reason that it advises the jury that if they should find that each of the defendants committed one or more acts of negligence as charged in the complaint and that such acts of negligence proximately contributed to cause injury to the plaintiff, neither defendant can escape liability to recompense the plaintiff for the injuries thus caused on the grounds that the acts of the other also contributed to such injuries. Under the law of Indiana, there can be no recovery against either defendant unless the evidence established by a preponderance of the evidence that such defendant was guilty of an actionable act of negligence supported by evidence on the subject and that such act of negligence was a proximate cause of the injuries complained of. To establish that the negligence of a defendant merely contributes to cause an injury is not sufficient under the law of Indiana."

The above objections to the giving of Instruction No. 9 cannot be sustained. These said objections are not considered as presenting the invalidity of said instruction. We conclude that the said instruction was proper, reasonably applicable to the evidence and to the issues and contains a correct statement of law as applied to the case on appeal. We are not able to find in the said objections any valid reason for reversal of this cause. Should the appellant be relying upon other than its first and second objections, above set forth, or on the other four expressed objections, we hold and decide, first, that said objections were not succinctly pointed out and, second, that no error was committed by the trial court, in any of the objections, in giving said instruction.

As to Part VI of appellant's brief, it contends that the giving of Instruction No. 10, tendered and requested by appellee, was erroneous and appellant sets forth four different objections. However, it relies upon what is designated as first and second objections, with one point attempting to support the first objection and six points attempting to support the second objection. The said instruction is as follows:

"10. If you find from a fair preponderance of all the evidence that at the time of the alleged accident, the defendants were careless and negligent in one or more of the respects charged in plaintiff's complaint, and you further find from a fair preponderance of all the evidence that plaintiff was injured in one or more of the respects substantially as alleged in his said complaint, and that such carelessness or negligence on the part of the defendant proximately contributed to the sustaining of such injuries, and that plaintiff, himself, was at the time of said alleged accident, guilty of no act or acts of contributory negligence, then you would be justified in finding for the plaintiff and awarding him such damages as would fairly compensate him for his injuries sustained and endured, if any, not to exceed the sum of $50,000.00."

We hold that this instruction correctly states the law applicable to the issues and the evidence and furthermore, we hold that it is not mandatory in character. It will be noticed that the said instruction permits the jury to find from a fair preponderance of the evidence certain fundamental elements and then *if* the plaintiff (appellee) were guilty of no act or acts of contributory negligence "then you would be justified in finding for the plaintiff (appellee) and award him such damages as would fairly compensate him for his injuries sustained and endured, if any, not to exceed the sum of $50,000.00." If the instruction is not mandatory, and we hold that it is not, then appellant's objections could not be well taken. Furthermore, we have already commented upon the notice to both appellants and the knowledge which they had of the situation as it obtained from a period beginning on February 7, 1961, and remain-

ing up to the time of the collision and injuries sustained by appellee. Also we have commented on the failure to give any warning after such notice and whether or not both appellants used reasonable care to inspect the sewer after notice of the break in the sewer. As we have said above, there was no absence of knowledge, actual or constructive, and as we likewise have said above, whether or not this appellant, as well as Evansville, used due and reasonable care under all of the circumstances shown by the evidence and under the issues tendered, were matters for the jury to determine. Such matters having been determined adversely to this appellant, as well as Evansville, and their characterization of the evidence by both appellants which is unfavorable to appellee, is not to be countenanced in the consideration of the trial court of the motion for new trial, and by this Court on appeal. As a matter of fact, and of law, we conclude that Instruction No. 10 meets all the standard and legal tests in light of the testimony and the issues presented.

As to Part VII of appellant's brief, Whirlpool asserts error in the giving of Instruction No. 12 under Specification No. 35 of its Motion for New Trial, and appellant presents two objections made at the trial court, and here presents them for our consideration.

Said Instruction No. 12 reads as follows:

"12. The Court instructs you that if you find from the preponderance of the evidence that only one defendant was guilty of negligence, and that such negligence directly and proximately caused the injuries to the plaintiff as alleged in the complaint, and you further find that the plaintiff has proven all of the other material allegations of the complaint, then the Court charges you that he is entitled to recover against the one defendant whom you find to be negligent and whose negligence was responsible for the injuries to the plaintiff, if any."

We interpret this instruction to mean that if the jury were to find that only one of the defendants below, or that both appellants herein, were found by a preponderance of the evi-

dence to be liable under the issues tendered and the evidence adduced, it could so find. We perceive nothing to be erroneous about this instruction.

In Part VIII of said appellant's brief it asserts that the trial court erred in the giving of Instruction No. 22 tendered and requested by the plaintiff, and relies upon Specification No. 36 of its Motion for New Trial. Said appellant duly entered objections to said Instruction numbered one (1) to five (5), both inclusive. Its said Instruction No. 22 reads as follows:

"22. If you find from a fair preponderance of the evidence, and under the instructions of the court, that the plaintiff is entitled to recover, then you should determine the amount of damages he has sustained, if any, from the evidence pertaining to such damages. In doing so you may take into consideration the nature and extent of plaintiff's physical injuries, if any, which he has sustained as a proximate result of the negligence alleged in the complaint and established by a fair preponderance of the evidence whether such injuries, if any, are temporary or permanent; his suffering in body and mind, which he has endured or which he may endure in the future if he is not yet cured, if any, resulting from such physical injuries, if any; his past and future loss of time and inability to work, if any, resulting from such injuries; the reasonable value of all expenses necessarily incurred, if any, in being treated for such injuries and any expenses which it is shown by a fair preponderance of the evidence is reasonably necessary to be incurred in the future in attempting to effect a cure, if any. From a consideration of the elements herein enumerated, you may assess his damages at such a sum as will be fair compensation to him, as shown by a fair preponderance of the evidence, not to exceed the sum prayed for in the complaint."

As will be observed, this Instruction No. 22 has to do with the injuries which the appellee sustained, comment concerning which has not heretofore been made in this opinion. Rhetorical paragraphs 11, 12 and 13 of the complaint herein for damages are as follow:

"11. That as a direct and proximate result of the negligence of the Defendants, and each of them, the Plaintiff suffered the following permanent, painful injuries:

(a) Both of the Plaintiff's knees were dislocated.

(b) Plaintiff's left foot was fractured.

(c) Plaintiff's left ankle was crushed.

(d) The Plaintiff's left tibia was fractured.

(e) Plaintiff's left fibula was fractured.

(f) The backs of both of the Plaintiff's hands were lacerated.

(g) That the Plaintiff's abdomen was bruised and contused.

"12. That immediately prior to the aforesaid collision the Plaintiff was a well and able-bodied man of the age of thirty-eight (38) years, pursuing the occupation of a truck driver and earning approximately One Hundred Eighty Dollars ($180.00) per week, and as a result of the injuries, the Plaintiff sustained as aforesaid, he has been unable to work from the time of said collision until the filing of this Complaint and will be unable to earn as much as One Hundred Eighty Dollars ($180.00) per week hereafter.

"13. That as a direct and proximate result of the negligence of the Defendants, and each of them, the Plaintiff was hospitalized for a period of eight (8) days at a cost of three hundred and eighty-nine dollars and forty-five cents ($389.45) and was required to employ the services of a physician; that the costs of said medical services at the time of filing this Complaint is unknown, and the Plaintiff will require said services in the future."

This appellant's first objection concerns the language therein contained as to ". . . future loss of time and ability to work . . . ." The second objection contains the assertion that this instruction invades the province of the jury by assuming a material fact at issue, that is, that appellee had sustained the items of damages enumerated therein. Neither one of these objections can be sustained. Appellant contends that there is not a scintilla of evidence in the record, or inference therefrom, that appellee will in the future either lose

time from his work or suffer inability to work at his usual occupation. The record does not support this contention.

Dr. Willis L. Pugh testified that he did not expect any improvement in appellee's condition and that it could get worse, as follows: ". . . If the joint should become so painful that Mr. Lehmann could not do ordinary walking an arthrodesis or a fusion of the ankle to make it completely stiff and stop the pain could be done. . . ." From this evidence it could be inferred that appellee might have future loss of time, future expenses, future hospitalization, and it was thoroughly proper for the jury to be instructed as it was in this respect. It neither invaded the province of the jury nor was it prejudicial in form. Furthermore, said instruction does not assume any fact, as said appellant states, and it will be noticed that the jury, by said instruction, was limited in its finding and assessment of the judgment by a fair preponderance of the evidence in each and every respect.

After we will have discussed the asserted errors of appellant Evansville, most of which are of a nature similar to the asserted errors of appellant Whirlpool, we will make comments on all of the asserted error and quote from various statutes and cases relative to the laws as applied to the pleadings herein and the evidence contained in the record; but before leaving Part VIII of this appellant's brief we refer to this appellant's Instruction No. 53, tendered and requested by said appellant and given by the trial court as follows:

"You are not to assess damages for any injury or condition from which the plaintiff may have suffered or may now be suffering, unless it has been established by a preponderance of the evidence that such injury or condition was proximately caused by the accident in question."

Hence, it will be observed that the jury, not once but at least twice, was admonished as to the limits of its consideration in the award of damages.

We come now to the brief of appellant City of Evansville,

the argument in which is contained in Parts I to IX, both inclusive. As did Whirlpool, in Part I of its brief Evansville asserts that the court erred in refusing to direct a verdict in favor of appellant City of Evansville; the verdict is not sustained by sufficient evidence; and that it is contrary to law. To support its argument under said Part I it relies upon sixteen (16) different specifications of its Motion for New Trial, as follow:

"1. The verdict of the jury is not sustained by sufficient evidence."

"2. The verdict of the jury is contrary to law."

"9. The court erred in overruling the motion and request of the defendant City of Evansville to give to the jury, at the conclusion of plaintiff's evidence in chief, a peremptory instruction to return a verdict in favor of defendant, City of Evansville."

"10. The court erred in refusing to give to the jury, at the conclusion of plaintiff's evidence in chief, a peremptory instruction to return a verdict in favor of the defendant, City of Evansville, which said instruction was then duly tendered in writing by defendant, City of Evansville, as said defendant's Instruction No. A."

"11. The court erred in overruling the motion and request of defendant, City of Evansville, to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction withdrawing the issues formed by certain allegations of sub-paragraph (a) of rhetorical paragraph 10 of plaintiff's complaint and said defendant's answer thereto from the consideration of the jury."

"12. The court erred in refusing to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction tendered in writing by the defendant, City of Evansville, withdrawing the issues formed by the allegations of sub-paragraph (a) of rhetorical paragraph 10 of plaintiff's complaint and the said defendant's answer thereto from the consideration of the jury, which said instruction was defendant City of Evansville's Instruction No. B, to which ruling and action of the court the said defendant duly objected and excepted."

"13. The court erred in overruling the motion and request of defendant, City of Evansville, to give to the

jury at the conclusion of plaintiff's evidence in chief, an instruction withdrawing the issues formed by certain allegations of sub-paragraph (b) of the rhetorical paragraph 10 of plaintiff's complaint and said defendant's answer thereto from the consideration of the jury."

"14. The court erred in refusing to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction tendered in writing by the defendant, City of Evansville, withdrawing the issue formed by the allegations of sub-paragraph (b) of rhetorical paragraph 10 of plaintiff's complaint and the said defendant's answer thereto from the consideration of the jury, which said instruction was defendant, City of Evansville's Instruction No. C, to which ruling and action of the court the said defendant duly objected and excepted."

"15. The court erred in overruling the motion and request of defendant, City of Evansville, to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction withdrawing the issues formed by certain allegations of sub-paragraph (c) of rhetorical paragraph 10 of plaintiff's complaint and said defendant's answer thereto from the consideration of the jury."

"16. The court erred in refusing to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction tendered in writing by the defendant, City of Evansville, withdrawing the issue formed by the allegations of sub-paragraph (c) of rhetorical paragraph 10 of plaintiff's complaint and the said defendant's answer thereto from the consideration of the jury, which said instruction was defendant, City of Evansville's Instruction No. D, to which ruling and action of the court the said defendant duly objected and excepted."

"17. The court erred in overruling the motion and request of defendant, City of Evansville, to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction withdrawing the issues formed by certain allegations of sub-paragraph (d) of rhetorical paragraph 10 of plaintiff's complaint and said defendant's answer thereto from the consideration of the jury."

"18. The court erred in refusing to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction tendered in writing by the defendant, City of Evansville, withdrawing the issue formed by the allegations of sub-paragraph (d) of rhetorical paragraph 10 of plaintiff's complaint and the said defendant's answer

thereto from the consideration of the jury, which said instruction was defendant, City of Evansville's Instruction No. E, to which ruling and action of the court the said defendant duly objected and excepted."

"19. The court erred in overruling the motion and request of defendant, City of Evansville, to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction withdrawing the issues formed by certain allegations of sub-paragraph (e) of rhetorical paragraph 10 of plaintiff's complaint and said defendant's answer thereto from the consideration of the jury."

"20. The court erred in refusing to give to the jury at the conclusion of plaintiff's evidence in chief, an instruction tendered in writing by the defendant, City of Evansville, withdrawing the issue formed by the allegations of sub-paragraph (e) of rhetorical paragraph 10 of plaintiff's complaint and the said defendant's answer thereto from the consideration of the jury, which said instruction was defendant, City of Evansville's Instruction No. F, to which ruling and action of the court the said defendant duly objected and excepted."

"21. The court erred in overruling the motion and request of the defendant, City of Evansville, to give to the jury at the conclusion of all the evidence, a peremptory instruction to return a verdict in favor of said defendant."

"22. The court erred in refusing to give to the jury at the conclusion of all the evidence, a peremptory instruction tendered in writing by the defendant, City of Evansville, to return a verdict in favor of said defendant, which said instruction was said of defendant's Instruction No. G."

Many of these specifications are either exactly like or similar to the specifications of Whirlpool's Motion for New Trial. However, there are ten (10) more specifications presented by Evansville, inasmuch as Whirlpool presented only six (6) specifications. Approximately fifty pages of Evansville's brief are devoted to the support of the contentions set forth above.

We reiterate what has been said in our opinion under Part I of Whirlpool's argument.

There is no denial but what Whirlpool owned the sewer in question, which evidently provided the seed of the difficulty

and the negligence which the jury evidently found to exist on the part of both appellants. Plaintiff's Exhibit No. 6, above set forth, was introduced into the evidence but in their appeal briefs neither appellant appears to have considered it worthy of setting it forth in the briefs or even presenting a resume' thereof.

The circumstances under which Whirlpool became the owner of the sewer in question and its liability under the provisions of plaintiff's Exhibit No. 6, as well as the duties imposed by said instrument on the Board of County Commissioners and later by annexation on the City of Evansville, do not relieve it from liability to the appellee herein, under the guise of the authorities cited by this appellant, that it, as a municipal corporation, "incurs no liability for failure or negligence to maintain, repair or inspect a private sewer line." In its effort to free itself from liability, it relies upon McQuillin, *Municipal Corporations*, 3rd Edition Revised, Vol. 18, Sec. 53.118, page 457. It immediately thereafter refers to the same treatise at pages 457 and 458 thereof which cites and relies upon the following quotation:

> ". . . [it is the well-settled rule that a municipality is liable for damages caused by its negligence in the operation and maintenance of sewers and drains under its control. However, liability is restricted to the public sewers which the corporation controls;] *it does not extend to private sewers and drains which it did not construct or accept.* Unless legally authorized by the municipality to be constructed, or after construction duly ratified by it, municipal liability for damage caused by sewers and drains does not exist. Accordingly there is no municipal liability for sewers or drains or culverts constructed by third persons for their own use and not controlled by the municipality. . . ." (Brackets supplied by writer and emphasis supplied by City of Evansville.)

Said plaintiff's Exhibit No. 6, among other things, provides "The second party (Whirlpool) agrees that all surface operations in connection with the construction and mainte-

nance of said sewer shall be at all times subject to the supervision and control of the first party. (City of Evansville.)" One cannot read this instrument without fully concluding that this appellant, Evansville, was bound thereby in accordance with its terms and which, in our opinion, removes it from the naked category of a private sewer. Furthermore, the seepage from said break, the oozing of the sewer liquid to the top of the surface on the north side of Diamond Avenue, and thence flowing onto the north lane, or west traffic lane of Diamond Avenue, where it froze and thawed, thus creating the hazardous condition, implies also that the direct and proximate cause of the collision and injuries to appellee was the failure to maintain Diamond Avenue in a safe condition as the law requires appellant so to do. We have already answered the question now raised by this appellant as to the location of the collision. According to the evidence it occurred on the pavement on Diamond Avenue, and the jury so found by its answer to an interrogatory propounded to it. There is no showing that any municipality other than the City of Evansville was charged with the responsibility of maintaining Diamond Avenue in its entirety.

There is no doubt, under the provisions of plaintiff's Exhibit 6 that Evansville at all times was required to maintain control of the private sewer of Whirlpool. However, even if it were held that Evansville had no responsibility of any kind or character for the maintenance of the sewer, under the provisions of plaintiff's Exhibit 6, the fact is that the break in the sewer itself was a proximate cause, if not the immediate cause, of the perilous condition of Diamond Avenue, which, under all the statutes and the case law on the subject, creates liability in Evansville for failure properly to maintain said Diamond Avenue and to repair it, after notice of the perilous condition that existed.

Evansville does not necessarily appraise correctly the evidence when it says that there is no dispute but that the

collision, and each event leading up to the same, occurred within the boundaries of the State Highway right-of-way. The jury, by answer to interrogatories, found that the collision occurred on Diamond Avenue, and this part of appellant's brief, as well as the brief of Whirlpool on the same subject, is argumentative and presents only their characterization of the legal sense of the evidence.

There were a number of photographs introduced into the evidence, upon which marks were made by various and diverse witnesses, but they are not helpful to this Court in a manner that they were helpful to the jury in determining the place of the various occurrences. The mere statements, with much reiteration, that events transpired at certain places, do not make them true. This question was properly left to the jury and there was evidence to sustain its findings in these respects.

Evansville cites *The Board of Commissioners of Owen County* v. *Washington Township* (1890), 121 Ind. 379, 23 N. E. 257, which it says succinctly states at pages 380 and 381 as follows:

> ". . . A city or town can not control county bridges or highways, for their control is committed to the county authorities, nor, on the other hand, can county authorities control city bridges or streets. *Where there is no power to control there is no responsibility for a failure to repair, since the duty and its breach must concur to produce a right of action. . . .*" (Emphasis supplied by City of Evansville.)

This authority does not support Evansville because Evansville, under plaintiff's Exhibit 6, had the power of control; *a fortiori*, control leads to responsibility.

This Court observes no irreconcilable conflict between the decision in *The Board of Commissioners of Owen County* case, *supra,* and the judgment in this case, as well as the Acts of 1937, Ch. 256, Sec. 2; 1945, Ch. 278, Sec. 1; found in

§ 36-2902, Burns' 1949 Repl., which said statute reads as follows:

"The state highway commission shall select the route of highways in the system of highways under its control through incorporated cities and towns in the state . . . and may construct and improve the roadway of the streets, or any part thereof, to such width as may be determined by the commission in all incorporated cities and towns in the state over which highways in such system are routed . . . . Upon the completion of any such street it shall be *the duty of said commission to maintain the roadway of said street* so constructed by said commission, including the curbs and gutters, catch basins and inlets, within the limits of such street or highway *that form integral parts of such street or highway*, and it shall be the duty of such city or town to maintain the sidewalks and grass plats thereof and the connecting drainage facilities therefor. Whenever by this section the state highway commission is charged with the maintenance of any such street, said commission may regulate and control parking on such street and may remove all hazards to traffic therein . . . ." (Emphasis supplied by City of Evansville.)

Attention is called to the evidence which would permit the city to secure authority by telephone to correct the dangerous and perilous condition of Diamond Avenue. The jury properly could have found, that if authority from the State Commission were necessary for the city to repair or maintain Diamond Avenue, the evidence discloses that it would be immediately forthcoming by telephone asking for such permission. There is no evidence in support of either appellant's contention herein that the State Highway Commission constructed Diamond Avenue within the right-of-way limits of the State Highway Commission, or that the State Highway Commission had any obligation or duty to maintain or repair said Diamond Avenue.

We conclude that by an Act of the Indiana General Assembly, found in Burns' 1949 Replacement, § 36-2902, above cited and now paraphrased, permits the State Highway Commission to select the route of highways under its

control through incorporated cities such as Evansville, and it may construct and improve the roads and the streets, or any parts thereof, to such width as may be determined by the Commission over which highways are routed, and upon the completion of such street it shall be the duty of the Commission to maintain the roadway of said streets so constructed, including the curbs and gutters, etc., within the limits of such street or highway that form an integral part of such street or highway, and it shall be the duty of such city to maintain the sidewalks and grass plats thereof and the connecting drainage facilities therefor. Wherever by this section the Commission is charged with the maintenance of any such street, such Commission shall regulate and control parking thereon and may remove all hazards to traffic therein. Another part of this section provides that nothing in this section contained shall in any way relieve such city of any liability in reference thereto, now imposed upon it by law.

*Gardner* v. *City of Covington* (1927), 86 Ind. App. 229, 156 N. E. 830, cited by this appellant, was decided under a 1917 statute, whereas we are here dealing with a statute enacted in 1937 and amended in 1945, under and in pursuance of which this Court decided the case of *Town of Argos* v. *Harley et al.* (1943), 114 Ind. App. 290, 49 N. E. 2d 552, before the 1945 amendment.

For emphasis we again stress that the jury found by answer to interrogatory that Whirlpool had notice of the break in the sewer on "Tuesday, 2-7-1961." Also that the sewer leak in question was not in a part of the State Highway system and, finally, that the collision referred to in this appeal did not occur within a highway which was a part of the Indiana State Highway system. Again, we state for emphasis that there was evidence which sustained these answers to interrogatories, both directly and by legitimate natural inferences to be drawn.

The Opinion of the Attorney General, in 1938, relied upon by this appellant, has no significant application in this ap-

peal, for the reason that it appears from said opinion that the State Highway Commission "is charged with the duty to maintain the roadway of the street over which such highways pass." Obviously this language has reference to the paved portion of a street in a city. Under Point 5 of its brief this appellant questions the refusal of the trial court in withdrawing from consideration of the jury the issues raised by each of the sub-paragraphs of rhetorical paragraph 10, having to do with the particular acts of negligence alleged therein. It should be apparent from what we have already stated that this point is not well taken; that appellant's contention with respect to the legal import of the evidence being incorrect, this contention falls by its own weight. This is true with respect to Point 5 (a) where, by reiteration, this appellant in construing the legal import of the evidence, continues to assume an erroneous position. False premises breed false arguments and beget false conclusions. The same is true with this appellant's Points 5 (b), (c), (d) and (e), and while the authorities cited by this appellant under these points may state the law, as applicable to facts in each case, they have no application to this appeal.

In Part II of Evansville's brief, as does Whirlpool, it asserts error in the giving of appellee's Instruction No. 2, above set forth, which is based upon its Specification No. 23 of Motion for New Trial.

First, we reiterate what we have said in respect to Whirlpool's objections to this instruction and, second, we conclude that this appellant's objection to said instruction, as set forth in its brief and argued under Part II thereof, because of the false premises from which this appellant also proceeds, is not well taken.

In Part III of its argument this appellant attacks the validity and the giving of Instruction No. 7, tendered and requested by appellee, which said instruction is set out above. See Specification No. 24, Evansville's Motion for New Trial. We find no erroneous assumption by the trial court in ap-

proving and giving this instruction, nor do we find that by its giving, the trial court either assumed or presumed that the evidence disclosed acts of negligence on the part of this appellant. Under all the instructions given by the court, we deem it proper to conclude that the jury was fairly instructed on all phases of the law as applied to the evidence, and we cannot conclude, as this appellant urges, other than that this instruction states the law on an impersonal basis. This instruction appears to have been necessary for the jury to have been properly informed about how such liability, if any, is created by a corporate entity, including this appellant. We do not perceive that this instruction, as this appellant urges, commits the trial court to any presumption or assumption that any act of negligence either by this appellant or by Whirlpool was committed, and particularly is this true in view of this appellant's tendered Instruction No. 9, and given by the court as follows:

> "I instruct you that the defendant, City of Evansville, is under a duty to keep its public streets in a reasonably safe condition for travel and when such streets become unsafe then the city is under a further duty to protect those using the streets, provided, however, that an agent, servant or employee of the city, whose duty it was to maintain the streets, knew of the unsafe condition or that the condition existed long enough so that the city should have known of the condition, and provided further, that the city had a reasonable time and opportunity to provide the necessary protection.",

and Whirlpool's Instruction No. 2, given by the court, which is as follows:

> "This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as a private individual. The law is no respecter of persons; all persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice."

We may add that there were various other instructions concerning the liability of this appellant and of Whirlpool, and instructions with respect to the duty of appellee, limiting his right to recovery, which forces this Court to conclude that the charge to the jury was eminently fair in all respects; and we conclude further that the attack by this appellant, as well as Whirlpool, on this instruction, as well as all the others, is not consistent with instructions which both appellants tendered and which were given by the court. Each appellant herein has taken inconsistent positions with respect to the law of the case, as evidenced by other instructions which they tendered and which were given.

Part IV of this appellant's brief, relying upon Specification No. 25 of its Motion for New Trial, asserts and argues that there was error in the giving of Instruction No. 9 tendered by appellee. We think this instruction correctly states the law despite the contention of this appellant and, further, that said instruction was wholly within the issues and evidence. The action herein was against both appellants as *joint tort-feasors*. This instruction is not subject to the objections made at the trial court and asserted in this appeal.

Under Part V of its brief this appellant relies upon Specification No. 26 of its Motion for New Trial and says that the court erred in giving to the jury Instruction No. 10 tendered and requested by appellee. This instruction is set forth above. Again, we reiterate what we said in reference to this instruction under Whirlpool's objection. This appellant's first objection to this instruction is that it is "completely mandatory." We do not so regard it. Casual reading suggests forthwith that the jury was not instructed that it *must* find for the appellee, as this appellant asserts, but on the other hand, if it should find from a fair preponderance of all the evidence the sum total of those elements enumerated therein, with no contributory negligence on the part of the appellee, then it, the jury, would be *justi-*

*fied* in awarding damages, etc. The claim by this appellant that this instruction is mandatory does not make it so in fact. This is particularly true when this instruction is considered with all the other instructions, many of which were tendered by the appellants on the law and decided cases under the issues presented and the evidence introduced.

In Part VI of this appellant's brief, relying upon Specification No. 27 of its Motion for New Trial, this appellant contends that the giving to the jury of Instruction No. 12, tendered and requested by appellee, was erroneous. This instruction is set forth above. It is this Court's opinion that this instruction not only was proper but necessary, and read in the light of all the instructions, some of which were tendered by these appellants and given by the court, it was thoroughly proper and no error can be predicated on giving the same.

Relying upon its Specifications No. 30 of its Motion for New Trial, appellant in Part VII contends that the trial court erred in giving to the jury Instruction No. 22, tendered and requested by appellee, and as above set forth. We regard this instruction as proper and even necessary, in view of the pleadings, the issues and the evidence. This appellant erroneously asserts that there is not a scintilla of evidence in the record which establishes, or from which it can be inferred that "the appellee will, in the future, either lose time from his work or suffer an inability to work at his usual occupation as a truck driver." Of course he had returned to work at the time of trial. But it is not easy for us to perceive how this appellant, as well as Whirlpool, can strenuously urge that there is not a scintilla of evidence on this proposition. As we have indicated, under Whirlpool's objection to this instruction and its argument, the record reveals that Dr. Willis L. Pugh testified that he would not expect any improvement in appellee's condition and that it could get worse; that "If the joint should become so painful that Mr. Lehmann could not do ordinary walking an arthrodesis or a fusion of the ankle to make

it completely stiff and stop the pain could be done." This instruction, in our opinion, did not invade the province of the jury, having been predicated upon the jury's finding "from a fair preponderance of the evidence, and under the instructions of the Court, that the plaintiff is entitled to recover, then you should determine the amount of damages he has sustained, if any, from the evidence pertaining to such damages." We find no rule of law which this instruction contravenes, nor do we find any elements of damages called to the attention of the jury concerning which there was no evidence. This Court concedes that both appellants herein, throughout the trial, contested the claims and assertions of appellee as to damages, as to the place of collision, as to the liability of either or both appellants, as to notice, and other elements. So far as we can determine the jury, under the instructions of the court, the issues presented and the evidence, found against appellants. The mere fact that the jury may have found otherwise on one or more of the justiciable questions does not permit these appellants now to assert that their characterization, judgment and conviction as to the legal import of the evidence should prevail.

In Part VIII of its brief this appellant, relying upon Specifications No. 31 and No. 32 of its Motion for New Trial, contend that the court erred in giving Instructions No. 15 and No. 16, tendered and requested by its co-appellant, Whirlpool. Since these instructions and objections thereto are grouped under one part of the brief, we shall so consider them.

This appellant says that "by reading these instructions to the jury the court below demonstrated that its concept of the applicable law relating to the rights, and duties in the maintenance, repair and inspection of private sewers and in the maintenance, repair and control of state highways within its corporate limits, was fallacious." If, as we have said, this appellant, as well as Whirlpool, proceeded from a wrong premise, there is little wonder that they make such objections. Under the evidence in this case, as revealed by the rec-

ord, and particularly under plaintiff's (appellee's) Exhibit No. 6, we express the opinion that the trial court was eminently correct in stating the law on the question now before us. It will be noticed that there is no contention on the part of either appellant that if there is liability, one appellant is primarily liable and the other secondarily liable. For this Court to include in this opinion any remarks with respect to primary and secondary liability, if any, doubtless would be *obiter dicta*, and this opinion already is of sufficient length that we are restrained from making undue remarks on this subject.

As to Part IX of its brief, relying upon Specifications No. 39, No. 40, No. 41, No. 42, No. 43 and No. 45 of its Motion for New Trial, this appellant asserts error in the refusal of the trial court to give its tendered Instructions numbered 11, 12, 13, 14, 15, 18 and 19. These instructions were as follow:

"No. 11. I instruct you that the defendant, City of Evansville, is not responsible for the inspection, maintenance and repair of privately owned sewers under public streets."

"No. 12. I instruct you that the defendant, City of Evansville, is not responsible for the inspection, maintenance and repair of privately owned sewers under streets and highways which are part of the state highway system."

"No. 13. I instruct you that the defendant, City of Evansville, is not responsible for ice and water upon a street or highway which is part of the state highway system."

"No. 14. I instruct you that a city is not liable for a defective sewer that it did not construct or which it has not adopted into its own sewerage system. By adopting it is meant that the city has assumed the control and maintenance of the sewer."

"No. 15. I instruct you that the defendant, City of Evansville, is under no legal duty to place upon a street or highway of the state highway system, a barricade or obstruction of any kind."

"No. 18. A statute of the State of Indiana, in full force and effect at the time of the accident in controversy, provides in part, as follows:

'36-2903. OPENINGS AND OBSTRUCTIONS IN STREETS—PERMIT—VIOLATION—PENALTY FOR VIOLATION.—No opening shall be made in any highway in the state highway system, or in the right of way of any such highway, or in the roadway of any street of any city or town over which such highway is routed, the maintenance of which street the state highway commission is charged with by law, nor shall any structure or obstruction be placed in any such highway or roadway of any such street without the consent of the state highway commission. . . . (Acts 1937, ch. 256, Sec. 2, p. 1199)'

If you find from the evidence in this case that the obstruction in the highway in the form of ice was in the right of way of a highway in the state highway system, then I instruct you that the defendant, City of Evansville, was prohibited by such statute from taking any action with reference to such obstruction without the consent of the state highway commission of the state of Indiana and if you find that the City of Evansville did not have such consent your finding therefore should be for the defendant, City of Evansville."

"No. 19. I instruct you that if you find by a preponderance of the evidence that the sewer leak, referred to in the pleadings and in the evidence, was in a highway which was part of the state highway system of the State of Indiana; if you further find by a preponderance of the evidence that said sewer was owned by the defendant Whirlpool Corporation and that said Whirlpool Corporation was solely responsible for the maintenance of said sewer; and if you further find by a preponderance of the evidence that the collision referred to in the pleadings and in the evidence occurred within a highway which was part of the state highway system of the State of Indiana, then your finding should be for the defendant, City of Evansville."

This appellant says that the refusal to give these instructions presents substantially the same question and, therefore, they are grouped and supported by one argument, in conformity with Rule 2-17 (e) of the Supreme Court of Indiana.

Our attention has been called to no evidence which even suggests that any one, or all, of these instructions should have been given to the jury. The trial court was unwilling to

adopt the contentions of this appellant either that there was no responsibility for the inspection, maintenance and repair of the sewer established under appellee's Exhibit No. 6; or that Evansville was not responsible for the inspection, maintenance and repair of said sewer; or that Evansville was not responsible for the ice and water upon its street; or that Evansville was not liable for the conditions resulting from the defective sewer; or that Evansville is under no legal duty to place upon its street a barricade or obstruction of any kind to protect the public traffic, and appellee in particular; all as shown by the evidence. And in its argument with respect to the refusal to give Instruction No. 18 Evansville persists again that § 36-2903, Burns' 1949 Replacement, is applicable, when there is no evidence called to our attention which supports it.

And in respect to the refusal to give this appellant's Instruction No. 19, it is our opinion that the refused instruction was not in consonance with the issues and the evidence as we understand them. Whether or not an instruction on primary and secondary liability would have been in order is not for us now to say, for the reason that the question has never been presented and is not urged in this appeal.

Succeeding to the rights, duties and obligations of the Board of County Commissioners of Vanderburgh County, under the agreement of May 14, 1942, when annexation took place, this appellant is bound thereby, and Whirlpool, as successor in ownership, and the other party to the agreement, Republic Aviation Corporation, became obligated under the agreement as set forth therein. Note that the grantor in said agreement reserves "at all times . . . the supervision and control." Note that Whirlpool, as successor in ownership, is bound at all times to "comply with such orders and directions as should be made by the First Party (Evansville) concerning the method of the construction and maintenance of said sewer and that it will at all times, in

connection therewith, comply with all orders of the First Party, and the statute of the State of Indiana."

Note again that it was agreed between the predecessor parties in interest "that upon failure of said Second Party (Whirlpool), upon reasonable notice of writing, to comply with any order of the First Party (Evansville) or other proper department or authority, concerning the maintenance of said sewer, the First Party (Evansville) shall have the right either by appropriate legal proceedings or in any other lawful manner, to declare the rights hereby granted forfeited, and to compel the Second Party to remove the said sewer from the said street."

Note again that the grant was made "subject to the full and complete control of the said above described highway, (now Diamond Avenue) by the proper authorities in said county, (Evansville) who shall at any time have the right to regulate the use of said highway and to change the grade thereof as public convenience may require."

And note finally that "First Party (Evansville) does hereby also grant unto the Second Party, its successors and assigns, the right to enter upon said area and premises above described, at all reasonable times for the purpose of inspecting, repairing, removing and maintaining said sewer, *subject, however to the control and supervision of said First Party.* (Evansville)." (Emphasis supplied.)

By the very agreement, appellee's Exhibit No. 6, entered into by predecessors in interest and succeeded in interest by these appellants, Evansville required Whirlpool, who had the right to enter upon the premises for such purpose, *but under the control and supervision of said Evansville,* to maintain, repair, etc.

We find no stated objections in either of appellant's briefs, and upon which each of them relies, that can be sustained. On the other hand, considered as a whole, the instructions

given, fully and fairly instructed the jury and we find no instruction to which objection was made and expressed and contended that should nullify the whole charge to the jury or that would justify reversal.

In conclusion, we have found no error advanced under either appellant's contentions which this Court can sustain.

Judgment affirmed.

Bierly, C. J., concurs. Hunter and Smith, JJ., concur in result.

## On Petition for Rehearing

Mote, J.—Each appellant herein has filed a petition for rehearing.

Appellant, Whirlpool Corporation, has not submitted a brief in support of its petition but has presented arguments therein designed to support its contentions.

Appellant, City of Evansville's petition for rehearing also contains arguments therein designed to support its said contentions and said appellant has also submitted an argumentative brief.

By petition, appellee seeks dismissal of the said petition because of asserted lack of compliance with Rule 2-22 of the Supreme Court of Indiana, adopted for our guidance.

Rule 2-22 of the Supreme Court, governing this matter, reads as follows:

"Rule 2-22. REHEARINGS. Application for a rehearing of any cause shall be made by petition, separate from the briefs, signed by counsel, and filed with the clerk within twenty (20) days from rendition of the decision, stating concisely the reasons why the decision is thought to be erroneous. Such application may, if desired, be supported by briefs, but such briefs will not be received after the time allowed for filing the petition. Parties opposing the rehearing may file briefs within ten (10) days after the filing of the petition. Adopted April 17, 1940. Effective September 2, 1940. Amended June 17, 1943. Effective September 6, 1943."

It has been held by our courts that a petition for rehearing must conform to the aforesaid Rule 2-22 and that it must not be an argumentative brief. See *Guthrie* v. *Blakely, et al* (1956), 127 Ind. App. 119, 130 N. E. 2d 62, 131 N. E. 2d 357; *Maryland Casualty Co., etc.* v. *Weiss* (1958), 129 Ind. App. 481, 156 N. E. 2d 644, 157 N. E. 2d 840.

In the case of *Automobile Underwriters, Inc.* v. *Smith* (1961), 241 Ind. 302, 171 N. E. 2d 823, the Supreme Court stated:

". . . and if such reasons (referring to reasons why the decision is thought to be erroneous) cannot be concisely stated, and it is considered that extensive argument in support of alleged errors in the petition is desired, such argument must be submitted *separate* from the petition."

Failure to comply with Rule 2-22 of the Supreme Court of Indiana may cause dismissal of appellants' petitions for rehearing.

It is not our purpose to violate the provisions of any rule, yet we are faced with the general rule that, although rules are adopted for the benefit of the court as well as for the use and benefit of the parties upon which they safely may rely, we do not wish to assume an arbitrary power of dismissal which finally would dispose of the appeal. Hence, we hereby deny the petitions for rehearing, as well as appellee's petition for dismissal of said petitions for rehearing.

Smith, P. J., Bierly and Hunter, JJ., concur.

NOTE.—Reported in 210 N. E. 2d 672. Rehearing denied in 211 N. E. 2d 796.