## GARDNER *v.* CITY OF COVINGTON.

[No. 12,945. Filed May 27, 1927.]

1. HIGHWAYS.—*State Highway Commission has exclusive control of maintenance and repair of streets in cities and towns taken over as part of state highway system.*—Under §22 of the State Highway Act of 1919 as amended by Acts 1923 p. 246 (§8289 Burns 1926), the State Highway Commission has exclusive control of the maintenance and repair of streets in cities and towns which it has taken over as a part of the state highway system, and, therefore, exclusive of the authority which the city or town had under the Municipal Code (Acts 1905 p. 236, §10257 *et seq.* Burns 1926). p. 236.

2. HIGHWAYS.—*City not liable for personal injuries resulting from defective street which had been taken over by State Highway Commission.*—Since the enactment of the State Highway Law, as to streets in cities and towns taken over as "main market highways," the improvement, maintenance and

repair thereof have been in the exclusive control of the high-way commission, and any such city would not be liable for personal injuries resulting from defects in any such street. p. 236.

From Fountain Circuit Court; *O. B. Ratcliff*, Judge.

Action by Myron E. Gardner against the city of Covington. From a judgment for defendant, the plaintiff appeals. *Affirmed.* By the court in banc.

*W. N. White* and *E. F. McCabe*, for appellant.
*Lucas Nebeker* and *Courtney W. Dice*, for appellee.

McMAHAN, C. J.—Action by appellant for damages caused by the alleged negligence of appellee in failing to keep a public street therein in repair. Appellee answered in two paragraphs, the first of which was later withdrawn. A demurrer to the second was overruled. Appellant excepted and refusing to plead further, judgment was rendered that he take nothing; hence this appeal.

The complaint alleged that in the latter part of April or the first part of May, 1924, a washout occurred in the traveled portion of a certain street in said city; that the city had knowledge thereof for several days, but neglected to repair or guard the same.

The answer to which the demurrer was addressed and overruled, after stating facts showing that the street where appellant had been injured was in the city and had been opened and laid out by the city and connected a named street in the city with a public highway south of the city, alleged that it had been improved at the joint expense of the city and of the county, and that where it crossed a named railroad, an overhead bridge had been constructed at the joint expense of the city, the county and the railroad; that thereafter, said newly-opened street and the highway with which it connected were, in a proceeding before the board of commission-

ers, improved under the "three-mile gravel road law," the costs thereof being paid by general taxation of the property within the township and city where the improvement was located; that thereafter, and long before the accident mentioned in the complaint, the commissioners of the county took over said improved highway, including the part in the city where the accident happened, for the purpose of maintenance, and thereafter maintained the same as a part of the free gravel roads of the county, paying for such maintenance out of the gravel-road fund and so maintained said street to the exclusion of the city, until a date long prior to the happening of the accident, when the State of Indiana, by and through the State Highway Commission, marked, laid off, designated and approved the same as a Main Market highway, and took over the same to the complete exclusion of appellee, and took complete charge, control and jurisdiction and maintenance thereof to the exclusion of appellee; that appellee is a city of less than 2,500 inhabitants as shown by the last preceding United States census; that the part of the street in question is not in the platted part of the city, but is in a place where the houses are more than 500 feet apart; that ever since the state took over control and maintenance of said street, appellee has had and exercised no authority or jurisdiction over the same and has had no control of the maintenance thereof, but that the state has asserted and exercised all control, management, and maintenance thereof to the exclusion of appellee, said street being a part of State Highway No. 33, where the same passes through appellee city.

Section 53 of the Municipal Code, Acts 1905 p. 236, cl. 31, §10284 Burns 1926, gives cities authority to enact ordinances for the purpose, among other things, for the appointment of a street commissioner or other necessary officer to keep all streets and alleys clean and

free from obstructions to public travel. Section 94 of the same act, §10341 Burns 1926, in so far as here material, is as follows: "It shall be the duty of the board of public works to have general supervision over the streets, alleys, sewers, public grounds and other property of the city, unless otherwise provided in this act, and to keep the same in repair and good condition, and to provide for the cleaning of such streets and alleys. The costs of such care and repairs and of the cleaning and sweeping of such streets shall be paid out of the general fund." And §267 of the act, §11186 Burns 1926, provides, among other things, that "Every city and town, except as otherwise provided by law, shall have exclusive power over streets, alleys, * * * and public grounds within such city or town, and may * * * lay out, survey, extend and open streets * * * and make repairs therein and thereto," while §11188 Burns 1926, §269 of the act of 1905, provides: "Every city and town shall have exclusive power, by ordinance, to control and care for its streets, alleys and other public places, and to prevent the obstruction or incumbrance of any such street, alley or other public place, so as to impede the free use of the same for its proper purposes."

The legislature in 1917, Acts 1917 p. 253, created the State Highway Commission, and provided for the construction, reconstruction, maintenance, repair of and control of public highways by that commission. Section 9 provided for the designation by the commission of the "main roads" of the state as "main market highways." Sections 10 and 11 provided a plan by which the board of commissioners of any county could apply to the State Highway Commission for aid in constructing or reconstructing any road of the county which the county commissioners might decide should be designated as "main market highways." Section 14 provided:

"If any highway to be constructed or reconstructed connects at the corporate limits of any city or town with an unimproved street of such city or town, the State Highway Commission may, in their discretion, improve the same as a part of such highway." And after providing that the cost of such improvement should be paid for jointly by the city or town, the county and the state, it provided that, "after such improvement is made the same shall be maintained and kept in repair by the city or town."

The act of 1917 creating the State Highway Commission was expressly repealed in 1919, by the enactment of a new law covering the same subject-matter, Acts 1919 p. 119. Section 12 of the new act provided that the State Highway Commission should lay out a system of state highways; that all highways theretofore designated as "main market highways" by the State Highway Commission under the act of 1917, should be state highways under the act of 1919, and should be improved and maintained as state highways and that all state highways, when accepted and approved, should from time to time be constructed, reconstructed, repaired and maintained by the State Highway Commission out of the state highway funds. Section 22 of this act was the same as §14 of the act of 1917, except that §22 provided that, after the State Highway Commission had improved any street in a city or town, the same should be thereafter maintained and repaired by the city or incorporated town "under the supervision of the State Highway Commission." The provision just quoted was not in the act of 1917, but was added in 1919. Said §22 was amended in 1923, Acts 1923 p. 246, §8289 Burns 1926, and is in part as follows: "If any state highway connects at the corporate limits of any city or of any town having a population of more than twenty-five hundred, as shown by the last proceeding (preced-

ing) United States census, with an *unimproved* street of such city or town, the State Highway Commission may, in its discretion,. improve the same as a part of such state highway; and if any state highway connects at the corporate limits of any town having a population of not to exceed twenty-five hundred, as shown by the last preceding United States census, with an *unimproved* street of such town, the State Highway Commission shall select, mark, and maintain such street until such time as it may improve the same as a part of such state highway, and after such street shall have been improved as a part of such state highway, such street shall thereafter be *maintained* as a part of such state highway; and if any state highway connects at the corporate limits of any town having a population of not to exceed twenty-five hundred, as shown by the last preceding United States census, with an improved street of such town, the state highway commission shall select, mark, and maintain the same as a part of such state highway." (Our italics.) It further provides that if a street of any city or town is improved under the provisions of the state highway act at an expense per mile greater than the average expense of the improvement of such road outside the limits of the city or town, the extra expense shall be paid by the city or town to the State Highway Commission, seventy-five per cent. of such extra expense to be paid by the city or town and twenty-five per cent. to be assessed against the abutting property.

No question is raised as to whether the street in question was or was not such a one as the statute authorized the State Highway Commission to take over and make a part of the state highway system, and we express no opinion on that question. It would seem that the statute gives the State Highway Commission authority to take over unimproved streets in a city, while in towns

it may take over either unimproved or improved streets, depending on whether the population is more or less than 2,500.

Appellant contends that the sections of the Municipal Code hereinbefore mentioned and of the state highway act must be construed in *pari materia*; that the act creating the State Highway Commission and providing for a system of state highways did not repeal the provisions of the Municipal Code which require cities and towns to maintain streets therein which have been taken over and made a part of the state highway system; and that since cities and towns were given exclusive control of streets and alleys within their corporate limits, and the statute does not in specific language give the State Highway Commission exclusive control over the streets in cities and towns which become a part of the state highway system, the control of the commission and the city or town in which the street is located is concurrent.

We cannot concur in this contention. We do not believe the legislature intended to divide the responsibility of keeping any part of the state highway system in repair. Section 14 of the act of 1917, and §22 of the act of 1919, expressly provided that the municipality should maintain that part of the state highway system which was inside the corporate limits, while §22, as amended in 1923, relieved the municipality of that burden and made it the duty of the State Highway Commission to maintain such streets and to pay the cost of such maintenance out of state funds. *Hudson Tp.* v. *Smith* (1914), 182 Ind. 260, 106 N. E. 359, cited by appellant and holding that circuit courts and boards of commissioners have concurrent jurisdiction in the matter of opening county roads is not in point.

Section 22, as amended in 1923, gives the State Highway Commission the absolute power to take over cer-

tain streets inside of cities and towns, and 1, 2. improve the same without consulting the author-ities of the city or town. The local municipal corporation has nothing to say as to the character of the improvement to be made, and having no control over the improvement of streets which are taken over by the commission and made a part of the state high-way system, and the exclusive control over the improve-ment of such streets being given to the commission, it is but reasonable to conclude that the legislature, when it relieved the cities and towns of the duty of maintain-ing such streets, and placed such duty on the commis-sion, intended that the authority of the State Highway Commission should be exclusive of the city or town. It is quite apparent that the legislature did not intend that two different governmental organizations should have control over the same highway and be responsible for its safety. "Where there is no power to control there is no responsibility for a failure to repair, since the duty and its breach must concur to produce a right of action." *Board, etc.*, v. *Washington Twp.* (1890), 121 Ind. 379, 23 N. E. 257.

Judgment affirmed.

Dausman, J., absent.