309 P.2d 244

Dale HARLAN and Hester Harlan, husband
and wife, Appellants,

v.

The CITY OF TUCSON, a Municipal Cor-
poration, Appellee.

No. 6078.

Supreme Court of Arizona.

March 19, 1957.

McCarty, Chandler & Udall, Tucson, for appellants.

Harold R. Neubauer, City Atty., Gerald B. Hirsch and Tom Allin, Jr., Asst. City Attys., Tucson, for appellee.

McCARTHY, Superior Court Judge.

This is an appeal by plaintiffs-appellants from a summary judgment in favor of defendant-appellee, holding under the undisputed facts that the city owed no duty to plaintiffs for personal injuries alleged to have been proximately caused by the claimed negligence of the city in the construction and maintenance of one of its streets.

The facts may be summarized as follows: On September 8, 1953, at approximately 4:30 a. m., the plaintiffs were riding as passengers in a motor vehicle being driven and owned by one Robert Ambro. Ambro and his wife are named as co-defendants with the City of Tucson in the complaint filed in the Superior Court, but are not parties to this appeal. The injuries of which plaintiffs complain occurred when the automobile was driven across the intersection of West Congress Street and the Freeway located within the city limits of Tucson. The alleged cause of the injuries were two dips constructed parallel to and along the edge of West Congress Street at this intersection, the alleged dangerous condition existing as to cars traveling on the Freeway being required to enter one dip, pass over the crown or rise in Congress Street, and then into the other dip.

The complaint alleges that the city negligently constructed, maintained and negligently failed to give adequate warning of the above dangerous condition, and further that the city, acting through its engineers, negligently approved and permitted the construction of the known dangerous condition, and that the said negligence was the proximate cause of their injuries.

The basis of the city's motion for summary judgment was that the intersection in question, although within the city limits, was a part of the state highway system of Arizona, and under the exclusive jurisdiction and control of the State of Arizona, and, having no duty therein, the city could not be negligent and was entitled to judgment as a matter of law.

The affidavits, exhibits and other documents relating to the motion for summary judgment show the following events to have transpired: On the 8th day of August, 1950, after proper resolutions therefor, the State of Arizona, acting through the state highway department, and the City of Tucson entered into an agreement as provided by section 59–205, A.C.A.1939, section 18–156, A.R.S.1956, wherein the project named the Tucson Controlled Access Highway within the Tucson city limits would be considered and deemed to be a state highway. This agreement further provided that after the

completion and opening of the project the State of Arizona would assume jurisdiction, control over and responsibility for maintenance of the highway, and that the city, upon receiving notice from the state that the project had been completed and opened to public travel, would assume jurisdiction, control over and responsibility for the maintenance of frontage roads, streets and connections, to include sweeping and cleaning, traffic signals and lighting

Attached to the above agreement, and as a part thereof, was a general memorandum concerning maintenance and other matters which define maintenance, as follows:

"a. The preservation and keeping of the rights-of-way, and each type of roadway, structure and facility, in the safe and usable condition to which it has been improved or constructed, but does not include reconstruction or other improvement."

At the time of the accident the frontage roads were paved, and that portion of the frontage or access road at the intersection of Congress and the Freeway where the accident occurred had been completed and opened to public travel. The main highway to be located between the frontage roads was still under construction. The frontage roads are the outer or access roads which are within the boundaries of the right-of-way of the highway, and run parallel to and connect with the main highway.

Prior to the accident the city entered into an agreement with the State of Arizona to install temporary traffic signals at the intersection involved. The city agreed to furnish labor, equipment and tools necessary to install the signal and pay its share of the cost of the traffic signal, the work to proceed under the direction of the state highway electrician. The city further agreed to provide funds for the maintenance of such signal, the state in return agreeing to supply the necessary electrical materials and apparatus and the supervisory state highway electrician. This traffic signal was so constructed and in operation at the time of the accident. The city also had erected speed panels and painted some appropriate lines with the word "Slow" near the intersection, swept the streets involved, and made minor repairs thereon. The city, prior to the accident, had corresponded with the state highway department about the dangerous hazard of the double dips, requesting their removal. After the accident the city participated in the reconstruction of the dips by furnishing some engineering services for that purpose, the state doing all the supervisory and construction work. The plan, design, construction and engineering of the whole project was under the sole control and jurisdiction of the state highway department.

The plaintiffs, by proper assignments of error and propositions of law, contend that the lower court erred in granting defendant

city's motion for summary judgment, for the reason that a municipality is liable to the public for injuries sustained as a result of the negligence of the municipality in failing to keep its streets in a reasonably safe condition for public travel, and the fact that a state highway department takes over a city street as a link in a state highway chain does not relieve the city of this liability for the reason that the primary duty of the city to keep its streets reasonably safe for public travel may not be delegated to another. From this premise the plaintiffs contend that the allegations of negligence and damage in their complaint, which were denied in defendant's answer, are triable issues of material fact and thus not subject to summary judgment.

In Arizona, as in most jurisdictions, it is the duty of a municipality to exercise ordinary care to keep its streets in a condition of reasonable safety for the use of the public. This duty is generally regarded as ministerial and corporate, and for a neglect to perform it the municipality may become liable for resulting injuries. City of Phoenix v. Mayfield, 41 Ariz. 537, 20 P.2d 296; City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323.

It is the position of defendant city that this duty to the traveling public no longer existed by reason of the agreements with the State of Arizona, pursuant to the terms of section 59–205, A.C.A.1939, supra, which provides as follows:

"Streets as links in routes and highways.—When the streets of incorporated cities or towns form necessary or convenient links for the connection of sections of state highways or state routes, or for carrying such highways or routes through such cities or towns, such streets may, by an agreement between the commission and the governing board of any such city or town, in the case of state highways, or between the board of supervisors, and the governing board of such city or town, in the case of county highways, be considered and deemed to be state highways, or county highways; provided such agreement shall make provisions for the maintenance of the streets so classified as such highways."

Plaintiffs' position is that the provisions of this section do not relieve the city of any liability for breach of its duty to the traveling public, and that the general rule and sound public policy prohibit such construction in the absence of clear legislative intent, even though the city street has become a part of the state highway system. However, the authorities relied on in support of this position are not in point, due to the fact that they interpret statutes different from ours.

The defendant City of Tucson, and the State of Arizona, having complied with the provisions of the section and thus making the controlled access highway within the

city limits a state highway, it is necessary to examine the Arizona statutes relative to control and jurisdiction over our state highways. The Constitution of Arizona, being silent on the topic of jurisdiction and control of roads and highways, the following statutes are controlling:

Section 59–101(a), A.C.A.1939, 1952 Supp., section 18–102, subd. A, A.R.S.1956:

"The highways of the state shall be administered by the Arizona highway department. Control of the department is vested in the state highway commission."

Section 59–105, A.C.A.1939, 1952 Supp., section 18–106, A.R.S.1956:

"Powers and duties of commission.— The commission shall:

\* \* \* \* \* \*

"6. Exercise complete and exclusive control and jurisdiction of the state highways, and prescribe such rules and regulations to govern the use of state highways as it may deem necessary for public safety and convenience, and to prevent the abuse and unauthorized use of such highways.

"7. Prescribe standard board and road signs, or other devices, and provide a uniform system of marking and signaling on all state routes and state highways, which shall correlate with and so far as possible conform to the system as approved by the American association of state highway officials, and regulate the use of advertising signboards and road signs on state roads or state highways."

Section 59–201, A.C.A.1939, section 18–151, A.R.S.1956:

"State routes and state highways.— The state highways, to be known as State Routes, shall consist of the highways heretofore declared to be state highways, under authority of law, which the commission may add to, or abandon or change. The state highways shall consist of such parts of the state routes as are designated and accepted as state highways by the commission. No highway which has not been designated as a state route shall become a state highway, nor shall any portion of a state route become a state highway until it shall have been specifically designated and accepted by the commission as a state highway, and ordered constructed and improved."

The use of the words "exercise complete and exclusive control and jurisdiction" in defining the powers and duties of the commission regarding state highways can only be held to be a clear and unambiguous statement of legislative intent that all parts of a "state highway" shall be exclusively controlled by the state except as otherwise modified by statute. The last clause of section 59–205, A.C.A.1939, supra, provides the

only modification of state highways within the city limits as follows:

"* * * provided such agreement shall make provisions for the maintenance of the streets so classified as such highways."

The plan, design, construction and engineering of the whole project was under the exclusive control of the state highway department, and from the controlling statutes and the defining of the term "maintenance" in the agreement set forth above, it is clear that the City of Tucson had no statutory duty or right to reconstruct or change the grade of the intersection or to do other than the term "maintain" ordinarily implies. In other words, after the state highway department constructed the frontage roads parallel to and within the right-of-way of the main highway to be later constructed, and did not see fit to alter the grade, crown or dips of Congress Street where the frontage roads crossed the intersection, a dangerous condition was perhaps created which the City of Tucson was without duty or authority to correct.

It is agreed that the city had not received any notice of completion of the project as provided in the agreement between the city and the state. This notice, being a condition precedent to any duty, the city did not then have the legal right to enter the frontage roads for maintenance purposes, much less the right to reconstruct any portion of the state highway project still under construction.

The intent of the legislature as expressed in Articles 1 and 2, Chapter 59, A.C.A.1939, Title 18, Chapter 1, A.R.S. 1956, being clear and unambiguous, the common-law duty of a city to keep its streets safe for the traveling public has been abrogated when, following the provision of section 59–205, a sufficient agreement has been entered into to designate a city street as a state highway, including a provision for maintenance by the state. There being no jurisdiction or control in the city over the intersection involved, it follows there could be no duty, and without a duty in the matter there can be no actionable negligence. This doctrine is well stated in the case of Gabbert v. City of Brownwood, Tex.Civ.App., 176 S.W.2d 344, 345, wherein the court stated:

"* * * since there can be 'no actionable negligence in the absence of some duty which has been neglected or violated' (Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, 126) * * *.

"* * * Such liability, when it exists, is incident to the City's jurisdiction over the streets and highways of the city. If such jurisdiction exists, then, as incident thereof, the duty exists to construct and/or maintain such streets and highways. * * * that

duty comprehends the further duty of so constructing and maintaining them with reasonable care for the safety of the public * * *."

To the same effect see: Gillespie v. City of Los Angeles, 36 Cal.2d 553, 225 P.2d 522; Perry v. City of Cumberland, 312 Ky. 375, 227 S.W.2d 411; Gardner v. City of Covington, 86 Ind.App. 229, 156 N.E. 830.

■ The plaintiffs further contend that the city, by its conduct, was exercising some control over the frontage roads and performing certain traffic control and maintenance functions, and hence, whether there was a complete delegation of authority or control was a question of fact not within the scope of a motion for summary judgment. These alleged acts of control consisted of the agreement, prior to the accident, for the installation of the temporary traffic control signals, and the installation thereof, the taking care of certain drainage matters, the placing of certain traffic markings and signs, sweeping, pavement patching and policing of the frontage roads.

The statutes of Arizona and the agreement between the city and the state in force at the time of the accident placed in the state exclusive control over traffic signals, signs and markings on state highways. The city was to assume jurisdiction and control over traffic signals on the frontage roads only after notice from the state of the completion and opening to the public of the entire highway project. This had not yet been done. Section 66–153d, A.C.A.1939, 1952 Supp., section 28–642, A.R.S.1956, provides:

"Commission to sign all state highways.—(a) The commission shall place and maintain such traffic-control devices, conforming to its manual and specifications, upon all state highways as it shall deem necessary to indicate and to carry out the provisions of this act [§§ 66–151—66–189] or to regulate, warn, or guide traffic.

"(b) No local authority shall place or maintain any traffic-control device upon any highway under the jurisdiction of the commission except by the latter's permission."

These statutes retain full jurisdiction and control over such traffic signals in the state; hence, the corresponding duty to the traveling public is the burden of the state.

■ The placing of other warning signs along the right-of-way and assistance in changing the grade of the Congress Street dips, both acts being done after the accident, by the city, at most were voluntary acts without duty in the matter, and being done after the accident, can furnish no basis for liability. The remaining alleged acts of control by the city such as sweeping, patching and policing are purely "maintenance" as distinguished from "construction" and being premature under the agreement

are the acts of a volunteer which in no way contributed to the injury.

■ By way of conclusion, plaintiffs argue the modern and enlightened judicial view, and the more sound public policy requires a departure from any holding limiting the liability of public and semi-public bodies for injuries to members of the public unless clear legislative intent is expressed to the contrary. A clear statement of public policy in such matters is stated in Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P.2d 220, 229, as follows:

"The declaration of 'public policy' is primarily a legislative function. The courts unquestionably have authority to declare a public policy which already exists and to base its decisions upon that ground. But in the absence of a legislative declaration of what that public policy is, before the courts are justified in declaring its existence such public policy should be so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to any substantial doubt. Sheehan v. North Country Community Hospital, 273 N.Y. 163, 7 N.E.2d 28, 29, 109 A.L.R. 1197. It is equally true that when the reason for the existence of a declared public policy no longer obtains that the courts should without hesitation declare that such public policy no longer exists."

■ We are of the opinion that in weighing the various policies involved in the construction of state highways, our legislature in enacting Articles 1 and 2 of Chapter 59, A.C.A.1939, supra, felt the duty to the traveling public could best be served and a uniform system of state highways best established by placing exclusive control in one agency, the state highway department, rather than having a dual control within city limits where conflicting policies and divided responsibility could possibly retard their optimum development.

There being no issue as to any material facts, the judgment of the lower court is affirmed.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.

UDALL, C. J., having disqualified himself, the Hon. WARREN L. McCARTHY, Judge of the Superior Court of Maricopa County, participated in his stead in the determination of this appeal.