680 P.2d 137

Loretta M. MAST, individually and as surviving spouse of Marvin Eugene Mast, on behalf of herself as surviving spouse of Marvin Eugene Mast; and on behalf of Robert Kevin Mast and Patricia Ann Mast, the surviving children of Marvin Eugene Mast, Plaintiffs-Appellants,

v.

STANDARD OIL COMPANY OF CALIFORNIA, a Delaware corporation, Defendant-Appellee.

Donald A. FORMENTINI and Lola L. Formentini, husband and wife, Plaintiffs-Appellants,

v.

STANDARD OIL COMPANY OF CALIFORNIA, a Delaware corporation; and Atchison, Topeka and Santa Fe Railway Company, a Delaware corporation, Defendant-Appellees.

No. 16619–PR.

Supreme Court of Arizona, En Banc.

March 5, 1984.

Hughes & Hughes, P.C. by John C. Hughes, Phoenix, for plaintiffs-appellants Mast.

Law Offices of Paul G. Rees, Jr., P.C. by Paul G. Rees, Jr., Tucson, for plaintiffs-appellants Formentini.

Ryley, Carlock & Ralston by Charles L. Chester, Phoenix, and Lawler, Felix & Hall by Thomas E. Workman, Jr., F. John Nyan, Anthony R. Delling, Los Angeles, Cal., for defendant-appellee Standard Oil Company of California.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Linwood C. Perkins, Jr., John G. Ryan, Phoenix, for defendant-appellee Atchison, Topeka and Santa Fe Railway Company.

FELDMAN, Justice.

Mast and Formentini (plaintiffs) brought a tort action against Standard Oil Company of California (defendant) and the Atchison, Topeka & Santa Fe Railway Com-pany. The trial court granted summary judgment against plaintiffs. The court of appeals, 140 Ariz. 19, 680 P.2d 155, affirmed. We granted review with respect to the judgment in favor of Standard Oil Company of California only. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and Ariz.R.Civ.App.P., Rule 23. This court is committed to a policy of granting review only where substantial issues of law exist or serious error has occurred. Ariz.R.Civ.App.P. Rule 23(c)4 and comment. The petition for review in this case was filed before the effective date of the revised Rule 23. The error claimed is serious injustice in result; review was granted on that basis. Even under the old rule, however, it was not the policy of this court to grant review where the question is simply whether a "scintilla of evidence" existed. Review of this case has been governed by that principle.

It is also the policy of the court that neither we, the trial court, nor the court of appeals should be required to perform counsel's work by searching the record to attempt to discover facts which establish or defeat the motion. These are tasks which must be left to counsel. *Adams v. Valley National Bank of Arizona*, 139 Ariz. 340, 678 P.2d 525 (App.1984).

The factual and procedural record of this litigation is extensive and voluminous. It is set forth in the opinion of the court of appeals; we state in the body of this opinion only such facts as are necessary in connection with the discussion.

Inherent in plaintiffs' theory of the case is the argument that gas leaks are common and that leaking liquid petroleum (LP) gas can accumulate in enclosed areas and can then ignite, explode and burn when dangerous levels of such gas have mixed with the ambient atmosphere. For that reason, federal regulation requires odorization to "indicate positively, by a distinctive odor" the point at which such concentrations reach one-fifth of the dangerous combustibility point. The applicable federal regulation follows:

(1) *Odorization.* All liquefied petroleum gas shall be effectively odorized as required in Note 2 of this paragraph to indicate positively, by a distinctive odor, the presence of gas down to a concentration in air of not over one-fifth the lower limit of combustibility: Provided, however, that odorization is not required if harmful in the use or further processing of the liquefied petroleum gas, or if odorization will serve no useful purpose as a warning agent in such use or further processing.

49 C.F.R., § 173.315(b)(1). There also appears to be an industry custom regarding odorization. This is based on Sec. 1300 of Pamphlet # 58 of the National Fire Protection Association (1972 Ed.). The wording of this is similar to the regulation.

## ODORIZATION

Defendant was a producer and shipper of LP gas. Plaintiffs claim that defendant breached its duty to odorize in accordance with the regulation. Defendant claims there was no breach of the duty to warn because the LP gas was odorized with Pennodorant 1013, a specific brand name odorant sold and commonly used for that purpose. Even if not so odorized, defendant claims compliance with the regulation was achieved because the particular batch of LP gas with which plaintiffs were working contained 11% propylene. The basis of defendant's argument was that "the uncontradicted evidence before the trial court demonstrated that the presence of a concentration of 11% propylene ... gave the LP gas a distinctive, gassy odor which would have alerted Mast and Formentini to the presence of [leaking] LP gas before a flammable concentration was reached." (Defendant's Supp. Memo. to S.Ct. at 3.) Thus, defendant asserts that it satisfied any duty to the plaintiffs as a matter of law. The trial court evidently agreed.

■ We find there was a genuine issue of material fact with regard to the presence of odorant sufficient to meet the regulation and thus a question of breach of defendant's duty to warn. Regulations such as that quoted above impose a mandatory duty or standard of care in lieu of that imposed by the common law; the majority of courts hold that breach of such a duty or standard of care is negligence per se. W. Prosser, *The Law of Torts*, § 36, at 201 (4th Ed.1971). According to the regulation, the warning defendant was required to give was to be conveyed by odorizing the LP gas so as to "indicate positively, by a *distinctive* odor," the presence of LP gas in concentrations in air of not more than one-fifth the lower limit of combustibility. 49 C.F.R. § 173.315(b)(1) (emphasis supplied). Defendant argues that the evidence indicates its compliance with the regulation by the addition of a commercial brand of odorant. Is there any evidence to the contrary? Formentini, who survived the explosion, states:

> I was standing in such a position that if odorized LP gas had leaked into the dome for a period of time sufficient to cause the very large, funnel-shaped flash of fire which I observed upon ignition, then I would have smelled the odorant [in the gas].

> .    .    .    .    .

> I had smelled odorized LP gas in the past, on several occasions; there were no defects in my sense of smell on the day in question, and I had not previously smelled LP gas on that day in any manner which would have dulled or deadened my sense of smell for such odorant.

Formentini Affidavit of December 10, 1979.

■ Plaintiffs claim that Formentini's affidavit raises a genuine issue of material fact for the jury. We agree that such negative evidence does present an issue of fact.

> [N]egative evidence can rise to the level of probative value only when coupled with a sufficient predicate, consisting of additional testimony or circumstances to show that the witness' position and attitude of attention were such that he probably would have heard or seen the occurrence of the event had it happened.

**4**

*Byars v. Arizona Public Service Co.,* 24 Ariz.App. 420, 424, 539 P.2d 534, 538 (1975).

■ Finding that there was a genuine issue of material fact with respect to the presence of the commercial odorant Standard Oil claimed to have added, we turn to the question of whether the propylene content of the LP gas itself could have met the standard of care imposed by law. The affidavits and evidentiary materials submitted by defendant do support the theory that the load of LP gas contained 11% propylene. They do establish the fact that propylene has a gassy odor, but nothing in the record establishes as a matter of law that propylene is the type of additive provided for the purpose of odorizing liquid petroleum gas. We take notice that petroleum gas may be obtained in the form of various compounds, such as propylene, a gaseous olefin obtained as a by-product of the refining process. The Lindbloom affidavit states:

> Propane from refinery operations has a distinct noticeable odor in the non-stenched [non-odorized] condition while propane from natural gas extraction has virtually no odor whatsoever in the non-stenched condition. It is my opinion that the difference in this odor intensity is because refinery propane always contains some propylene whereas natural gas propane contains no propylene.

Thus, a shipment of liquid petroleum gas may evidently contain butane, propane, propene (or propylene), and presumably other compounds. The evidence indicates that propylene is a form of gas which occasionally appears as a component of a shipment of LP gas. Defendant's motion established that propylene has a distinctive odor which is "gassy" in nature. One may infer however, that the gassy odor of propylene would be commonly associated with shipments of refinery LP gas. We do not believe that the evidence establishes as a matter of law that such odor meets the regulatory requirements that LP gas (which may include propylene) have a "distinctive odor" which will indicate "positive-

ly" a dangerous accumulation from a leak. Note 2 to the regulation reads as follows:

> The use of 1.0 pound of ethyl mercaptan, 1.0 pound of thiophane, or 1.4 pounds of amyl mercaptan per 10,000 gallons of liquefied petroleum gas shall be considered sufficient to meet the requirements of § 173.315(b)(1). This note does not exclude the use of any other odorant in sufficient quantity to meet the requirements of § 173.315(b)(1).

49 C.F.R. § 173.315(b)(1).

Of the three substances specifically authorized by the Note, two—and possibly all three (the record is silent on thiophane)—have an odor much different than the "gassy" smell of hydrocarbons such as propylene.

> MERCAPTAN: Any of a class of compounds with the general formula RSH that are analogous to the alcohols and phenols but contain sulphur in place of oxygen and that in the case of those of low molecular weight have very disagreeable odors; esp: ETHYL MERCAPTAN—called also THIOL; compare HYDROSULFIDE, THIOALCOHOL, THIOPHENOL.

*Webster's Third New International Dictionary* 1412 (1976). Thus, it is quite possible that the type of *distinctive* odor specified by the regulation is not one that carries a "gassy" smell common to hydrocarbons, but rather one that smells like "skunk" or sulphur.

It is true that Note 2 does not exclude use of other odorants "in sufficient quantities to meet the requirements," but it is simply impossible on this record to find as a matter of law that the gassy smell of propylene is the type of smell which the regulation requires to indicate *"positively, by a distinctive odor"* a dangerous buildup of leaking gas. In fact, plaintiffs argue that since propylene and other gases with a hydrocarbon origin (*e.g.,* butane) are often included in shipments of liquified petroleum gas from a refinery, and since small leaks are not infrequent, a simple gassy odor is not the type of warning required to warn of dangerous concentrations of leak-

ing gas. This argument is plausible, logical, and would be of great help to plaintiffs' position if it were supported by some citation to the record. Since it is not, we can give it no weight as a fact. However, it is a reasonable inference which might be drawn from those facts which are known. There is some evidence that the type of smell recognized by regulation and industry custom is the sulphur or skunk-like smell; one of the expert affidavits submitted by plaintiffs in connection with the summary judgment proceedings states:

> Affiant is aware that in the gas industry such a compound [mercaptan/thio-alcohol] is inserted into both natural gas and liquid propane gas as a warning device which he believes is required by law or industry standards or custom because such gas does not have a natural odor and in the absence of *such a Mercaptan warning,* a build-up of gas by leakage to an explosive level can occur. (Emphasis supplied).

Affidavit of David P. Lake. The type of odorants specified in the regulations seem to be those with a "skunk smell." The photos obtained during discovery (Exhibits 523 and 525) show that the containers of odorants carry a skunk logo. Also, Formentini stated in his affidavit:

> I was familiar with the smell of Mercaptan or "skunk oil" used as an odorant in LP gas; ...

The affidavit of defendant's expert, Duane V. Kniebes, indicates that the presence of 11% propylene in the LPG would put defendant in compliance with regulation and custom in the industry because its gassy odor ("alone or in combination with added odorant") would give "sufficient odor ... to provide adequate warning ...." The affidavit does *not* state as a fact that propylene is one of the substances which gives the type of *distinctive* odor recognized in the industry or which would be required under the regulation. The regulation does not require a "sufficient odor"; it requires a "distinctive odor." The conclusion that a sufficient odor would satisfy the regulation is therefore a matter of opinion which the jury need not accept in view of the contrary inference which can be drawn from the facts. Thus, in the absence of any evidence that the gassy, propylene odor is the type of distinctive odor usually used in compliance with the regulation, the finder of fact is free on this record to draw an inference that skunk-like odors are the type of warning required and that a gassy smell which might not be unusual in gas shipments is insufficient to give the required warning by indicating "positively, by a distinctive odor." To support such conclusions is the further statement from Formentini that if odorized gas had leaked into the dome of the tanker in sufficient quantities to have caused the ignition and explosion which he witnessed he "would have smelled the odorant...." We must presume that this evidence is as applicable to the propylene issue as it is to odorization through a commercial brand of odorant.

█ There seem, therefore, to be several conclusions that can be reached from the facts. To obtain summary judgment defendant must establish that all inferences which could rationally be drawn from the established facts are such as to exclude any genuine issue. This case appears to be one of those negligence cases in which jurors might reach different conclusions from uncontroverted facts. Such cases are generally not appropriate for summary adjudication. *Tribe v. Shell Oil Co., Inc.,* 133 Ariz. 517, 518, 652 P.2d 1040, 1041 (1982). We hold, therefore, that there was a genuine issue of fact with respect to the question of breach of duty.

## CAUSATION

█ The court of appeals reasoned that there was no issue with regard to proximate causation. The court held that because the LP gas was sufficiently odorized by the propylene, plaintiffs' claim that lack of proper odorization proximately caused the injuries to Mast and Formentini "is no longer viable." The court emphasized that plaintiffs' experts had no knowledge that the LP gas contained 11% propylene, and concluded that their opinions on causal con-

nection were based on sheer conjecture. Even assuming the experts were not aware of the propylene content, we believe there would be a genuine issue of fact with regard to causation. Formentini was knowledgeable about the smell of odorant with leaks, and was aware of the danger. He was on the alert for leaks of sufficient size to cause an explosion. He was aware that there was a leak. He was not aware that the amount which had accumulated was approaching ignition levels. In his affidavit, Formentini states that he was trying to determine the presence of a skunk-like odor but could not do so. He states that if he had

> detected the smell of LP gas odorant when [he] tested the air before [Mast] struck the blows to the valves, [he] would have immediately removed [himself] from the top of the tank car because [he] understood that [he] was not to be upon apparatus with leaks such as tanks.

Formentini further states:

> because I smelled no odorant, I concluded that there was no leak or that there had not been any sufficient buildup of LP gas to an explosive mixture.

From this evidence, a jury could certainly infer that if Formentini had smelled the distinctive smell of an odorant which met the regulation he would have left the place of danger and would have alerted his co-worker, Mast. Thus, the causation question, like the breach of duty question, dissolves into speculation over whether Formentini should have recognized the gassy smell of propylene as the warning that would have driven him to go to a place of safety. On this record, the defendant has failed to carry its burden of showing that there was no genuine issue of fact with regard to this question.

### TIMELINESS OF AFFIDAVITS

Much of the evidentiary material upon which plaintiffs rely on appeal was not submitted to the trial court until after the court's order granting the motion for summary judgment. After that order was made, plaintiffs moved for reconsideration and for new trial, submitting additional affidavits. In defendant's opposition to motion for new trial, defendant objected to the affidavits of Lake and Formentini as improper bases for a new trial because they were "incompetent, cumulative, and could have previously been obtained had plaintiffs' counsel diligently prosecuted his claim" and that Formentini's affidavit was offered nearly two months after the 10 day deadline required under Ariz.R.Civ.P., Rule 59. Of course, trial courts have discretion to refuse to consider new material if the party opposing the motion has been dilatory in obtaining or submitting evidence. Trial courts may well be more liberal in consideration of such material after an order of summary judgment than after there has been an actual evidentiary hearing. The trial judge here noted that he had read the material submitted with the motion for new trial. We assume, therefore, that absence of any comment indicating denial on procedural grounds indicates that the court considered the evidentiary materials supplied on the motion for new trial. The court evidently found them insufficient; this finding was erroneous.

We therefore vacate the judgment of the court of appeals to the extent it is contrary to this opinion and approve the remainder. The judgment in favor of Standard Oil is reversed and the case remanded for further proceedings. The trial court may, in its discretion, entertain further motions for summary judgment if such motions resolve all factual issues.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.