953 P.2d 168

Jose SANCHEZ, a minor child, By and Through his guardian ad litem, Craig GORDON; Teresa E. Barocio; Daniel Sanchez, Plaintiffs/Appellants.

v.

The CITY OF TUCSON, a political entity, Defendant/Appellee.

No. CV–97–0134–PR.

Supreme Court of Arizona,
En Banc.

Feb. 5, 1998.

Miller, Pitt & McAnally, P.C. by Thomas G. Cotter, Lindsay Brew, Tucson, for Jose Sanchez.

Lopez, Bevans & Perez–Medrano by Juan Perez–Medrano, Tucson, for Teresa E. Barocio and Daniel Sanchez.

Gabroy, Rollman & Bosse, P.C. by Richard A. Brown, Richard M. Rollman, Tucson, for City of Tucson.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

¶ 1   In this negligence case, the trial court granted summary judgment to the defendant City of Tucson ("City"). The court of appeals affirmed, based on the theory that the City did not exercise control over the location where the accident occurred, and therefore owed no duty to the infant plaintiff, Jose Sanchez ("plaintiff"). Because we conclude that issues of fact exist which preclude summary judgment, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

¶ 2   On the night of March 14, 1993, Teresa Barocio, carrying her eighteen-month-old son, plaintiff Jose Sanchez, attempted to cross West Ajo Way, a state route, at its intersection with South Pandora Avenue in Tucson. They were hit by a vehicle traveling on the state route. The child was catastrophically injured and is paralyzed from the waist down.

¶ 3   Plaintiff sued the driver of the vehicle, the State of Arizona ("State"), and the City. This appeal involves only the claim against the City. Plaintiff asserted that the City had a duty to maintain the roadway in a reasonably safe condition and that the City breached that duty by failing to install a traffic light at the intersection.

¶ 4   The City moved for summary judgment, arguing that it owed no duty to plaintiff as it did not have the authority to put up traffic lights on the roadway as the roadway was a state route maintained by the State. In opposition, plaintiff argued that the facts would support a finding that the City and the State exercised joint control over the accident site, therefore imposing a duty on the City to install a traffic light at the intersection.

¶ 5   The City's motion for summary judgment was granted and the court of appeals affirmed. *Sanchez v. City of Tucson*, 189 Ariz. 429, 943 P.2d 789 (App.1997). The court of appeals relied heavily on our case of *Harlan v. City of Tucson*, 82 Ariz. 111, 309

P.2d 244 (1957), to conclude that a city, county or other political subdivision of the State owes no duty to prevent injury on a state route, absent an agreement with the State in which the entity assumes such a duty. The court recognized that in the instant case the State and the City had an Intergovernmental Agreement ("IGA"), which created a duty on the part of the City to provide routine and emergency maintenance on the roadway in question. *Sanchez*, 189 Ariz. at 431, 943 P.2d at 791. It held, however, that the IGA did not impose a duty on the City to make improvements on the roadway, such as the installation of traffic lights. *Id.* Further, it held that Arizona Revised Statutes (A.R.S.) § 28–627(B) prohibited the City from installing a traffic light on the roadway absent written permission from the State. *Id.* Accordingly, the court affirmed the summary judgment in favor of the City. We granted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), Ariz. R. Civ.App. P. 23, and A.R.S. § 12–120.24.[1]

### ISSUE PRESENTED

¶ 6 Whether the City could be found to have assumed a duty to plaintiff to construct a traffic light in the area in question by virtue of its Intergovernmental Agreement with the State, its pattern of joint control over the roadway, and its authorization from the State to construct a traffic light.

### DISCUSSION

### I. Standard of Review

¶ 7 A trial judge should grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In deciding the motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in [its] favor." *Id.* at 309–10, 802 P.2d at 1008–09 (quoting from *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986) (citations omitted)). We review issues of summary judgment *de novo. United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

### II. The Issue

¶ 8 In deciding this case, we bear in mind that in negligence cases, "the rule is uniformly applied that where different inferences can be drawn from uncontroverted facts the case must be left to the jury." *Beach v. City of Phoenix*, 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983) (footnote omitted). Negligence cases where "jurors might reach different conclusions from uncontroverted facts ... are generally not appropriate for summary adjudication." *Mast v. Standard Oil Co. of Cal.*, 140 Ariz. 1, 5, 680 P.2d 137, 141 (1984) (citation omitted).

¶ 9 A supportable negligence action requires that the defendant owe a duty of care to the plaintiff. *See Bell v. Smitty's Super Valu, Inc.*, 183 Ariz. 66, 68, 900 P.2d 15, 17 (App.1995). A question of duty is "to be decided by the court as a matter of law." *Beach*, 136 Ariz. at 604, 667 P.2d at 1319 (footnote omitted).

¶ 10 In Arizona, a municipality owes a duty to the public to keep its streets in a reasonably safe condition. *See City of Phoenix v. Weedon*, 71 Ariz. 259, 263, 226 P.2d 157, 160 (1950), *Beach*, 136 Ariz. at 602, 667 P.2d at 1317. In this case, if the City exercised control over the roadway in question, it would owe a duty to plaintiff to keep it in a reasonably safe condition. *See Martinez v. State*, 177 Ariz. 270, 271, 866 P.2d 1356, 1357 (App.1993). The issue of control or amount of control, unlike the issue of duty, is "a *question of fact* which ordinarily should be left to the fact finder." *Lewis v. N.J. Riebe Enter., Inc.*, 170 Ariz. 384, 389, 825 P.2d 5, 10 (1992) (citations omitted). Therefore, whether the City exercised enough con-

---

1. There was no cross-petition for review and neither party preserved any issue presented to, but not decided by, the court of appeals pursuant to Ariz. R. Civ.App. P. 23. Thus, we deal only with the single issue presented in this petition for review.

trol over the roadway to have a duty to install a traffic light would generally be a question of fact for the jury.

¶ 11 The question before this court is whether plaintiff has provided enough factual evidence to defeat a summary judgment motion on the issue of control. Has plaintiff shown—with all of his evidence believed and all reasonable inferences drawn in his favor—that a jury could reasonably find that the City exercised sufficient control over the roadway to permit it to install a traffic light? We now examine plaintiff's argument in opposition to summary judgment.

### III. Facts in Support of Plaintiff's Case

¶ 12 Plaintiff's argument is that the record created a factual dispute as to whether the City had exercised control over the section of road involved and had therefore assumed a duty to the public to keep the roadway reasonably safe by installing a traffic light. Plaintiff relies on the relationship between the parties, including the IGA mentioned above, to show that the City exercised control over the roadway.

¶ 13 Plaintiff has pointed to many acts of the City as proof of the City's control over the roadway. For the sake of brevity, we summarize what we feel to be sufficient salient facts to defeat summary judgment. Plaintiff presented a 1973 memorandum from the City's Traffic Engineer, Charles Male, to Frank Brooks, Tucson's Assistant City Manager, stating that since the roadway was a state route, any action to alleviate traffic problems reported in this stretch of road would require a "joint effort" between the City and the State to develop a "mutually satisfactory" solution. Plaintiff also presented a 1979 traffic study conducted jointly by the City and the State to show that the City exercised control over the roadway.

¶ 14 Moreover, in 1981, the State approved installation of a traffic light for the intersection in question. The traffic light was to be erected by the City with private funds from a developer planning to build a shopping mall in the area. The developer later declared bankruptcy and the traffic light was never installed. Although the traf-

fic light was approved, in part, because of the expected traffic increase from the shopping mall, nothing in the record indicates either that the approval of the light was conditional on building the mall or that approval was withdrawn when the mall was not built. In other words, it is possible that the City had authority to install a traffic light where the accident occurred but chose not to do so when the private funding evaporated.

¶ 15 Plaintiff also relies on the IGA between the City and the State, in effect since 1983, as evidence that the City exercised some control over the roadway at the time of the accident, thereby creating a duty to keep the roadway in a reasonably safe condition. Under Arizona law, exclusive control and jurisdiction over state highways and routes is vested in the State, particularly in the Arizona Department of Transportation ("ADOT"). A.R.S. §§ 28–104(A), (B)(3) and 28–108(A)(19). The director of ADOT, however, has the power to relinquish the State's exclusive control and jurisdiction, by entering "into agreements on behalf of the State with counties, cities, towns or rural districts for the improvement or maintenance of state routes or for the joint improvement or maintenance thereof." A.R.S. § 28–108(A)(18) (as it existed on the date of the accident, see 1992 Ariz. Sess. Laws 655).

¶ 16 In the IGA, the City assumed responsibility for routine maintenance and operation of traffic lights and street lighting on specified intersections of state routes within the City of Tucson, but did not assume responsibility for improvements. The intersection involved in this case is not expressly listed in this agreement because it contained no traffic lights. In the IGA, however, the State and the City agreed that:

> Any new installation or any betterment shall be based on a traffic engineering study conducted, or concurred with, by the STATE; *and the mutual involvements shall be negotiable.* (emphasis added).

Plaintiff's argument is that the last clause of the sentence made this IGA a "joint improvement" agreement through which the City exercised control in determining the need for installation of traffic lights on state routes in

the City of Tucson, creating a duty upon the City to keep the roadways reasonably safe.

¶ 17 Plaintiff also presented evidence of a 1995 meeting (after the accident) at which the installation of a traffic light in that section of the roadway was discussed (a precise location had not yet been determined). At that meeting, a City Council member stated that a solution to the traffic problem on the roadway had not been worked out, partially because "one government or the other said it wasn't working," referring to the State and the City. This evidence, even if a discussion of a subsequent remedial measure, would be admissible on the issue of control. *See* Ariz. R. Evid. 407; *Manhattan–Dickman Const. Co. v. Shawler*, 113 Ariz. 549, 552, 558 P.2d 894, 897 (1976); *Sullins v. Third and Catalina Const. Partnership*, 124 Ariz. 114, 119, 602 P.2d 495, 500 (App.1979).

¶ 18 The court of appeals, relying on *Harlan*, indicated that the only manner in which a political subdivision of the State could assume a duty to the public on a state route would be through an agreement. In *Harlan*, the State was in the process of constructing a highway within the City of Tucson. 82 Ariz. at 113–14, 309 P.2d at 246–47. Although the highway had not been finished, the frontage roads had been opened to the public. *Id.* at 114, 309 P.2d at 246–247. The *Harlan* plaintiffs were injured when they entered two dips constructed at the intersection of the highway and a city street. *Id.* at 113, 309 P.2d at 246.

¶ 19 The State and the City had signed an agreement which provided that the City would assume responsibility for maintenance of frontage roads once construction was complete, but would not assume responsibility for improvements. *Id.* at 114, 309 P.2d at 246. Under the statutes at the time, the State could only contract with another entity for the maintenance of state roads, but not for improvements. *Id.* at 116–117, 309 P.2d at 248. The court found that the agreement did not give the City either the duty or the right

to make the changes necessary to alleviate the dangerous condition. *Id.* at 117, 309 P.2d at 248–49.

¶ 20 The *Harlan* plaintiffs brought up the issue of actual control. The alleged acts of control included some maintenance work before the accident and aid to the State in changing the grade of the highway after the accident. *Id.* at 118, 309 P.2d at 249. Although the court addressed the issue of actual control, it relied on the written agreement between the State and the City to resolve the issue. Under the agreement, the City was to assume maintenance duties only after notice from the State that construction was complete. *Id.* Because no such notice had been given, the court reasoned there could be no liability based on the maintenance performed by the City; without notice the maintenance constituted "the acts of a volunteer which in no way contributed to the injury." *Id.* at 118–119, 309 P.2d at 250. The court also reasoned that the aid in changing the grade after the accident, an improvement which the City was prohibited from making under the law at the time, was a "voluntary act[ ] without duty in the matter, and being done after the accident, can furnish no basis for liability." *Id.* at 118, 309 P.2d at 250. The Harlan court held that the evidence showed the acts of a volunteer, not someone potentially exercising joint control.[2] *Id.* at 118–19, 309 P.2d at 249–50. *Harlan* should not be read to preclude potential liability for one who exercises control, but does so in a negligent manner.

¶ 21 We believe plaintiff has presented sufficient probative evidence to raise a factual issue: a jury could reasonably find that the City exercised control over the roadway as part of its "joint effort" with the State to alleviate traffic problems.

¶ 22 Even if a jury finds that the City had no right to exercise control under the IGA, it could alternatively find that the City in fact exercised control over the roadway and assumed a duty to the public to keep the roadway in a reasonably

2. Although the issue is not before us, it is important to note that the acts of a volunteer, governmental or private, can in fact lead to liability for negligence. *See Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 236–37, 537 P.2d 618, 621–22 (1975); *see also* W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts*, § 56, at 379–82 (5th ed.1984).

safe condition. *See Martinez,* 177 Ariz. at 271, 866 P.2d at 1357. *See also Federoff v. Camperlengo,* 215 A.D.2d 806, 626 N.Y.S.2d 301, 303 (1995); *Nurek v. Town of Vestal,* 115 A.D.2d 116, 494 N.Y.S.2d 920, 921–22 (1985). As we have previously stated,

> ["D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.
>
> . . . .
>
> No better general statement can be made, than that the courts will find a duty, where, in general, reasonable men would recognize it and agree that it exists.

*Ontiveros v. Borak,* 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983) (citing William L. Prosser, *Handbook of the Law of Torts,* § 53, at 324–27 (4th ed.1971)).

¶ 23  Therefore, the question of whether the City had or exercised enough control to be able to install a traffic light on the roadway is a question of fact to be decided by a jury.

**THE DISSENT**

¶ 24  The dissent's disagreement with the majority is founded primarily upon two bases. First, the dissent asserts that because plaintiff has a claim against the State there is no reason to permit the jury to consider evidence of the City's negligence. We disagree.

¶ 25  Under the Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. §§ 12–2501 to 12–2509, each tortfeasor in a personal injury action is liable only for his or her share of fault. *See* A.R.S. § 12–2506(A); *see also Aitken v. Industrial Comm'n of Arizona,* 183 Ariz. 387, 392, 904 P.2d 456, 461 (1995). Under UCATA, the State can name nonparties at fault and have the trier of fact apportion liability among them, thus reducing the amount recoverable from the State. *See* A.R.S. § 12–2506(A). In fact, after the trial court in this case granted the City's motion for summary judgment, the State named the City a nonparty at fault pursuant to Rule 26(b)(5) of the Arizona Rules of Civil Procedure and A.R.S.

§ 12–2506(B). The State, when it settled, was only paying for its share of fault, not that of any other tortfeasor. *See* A.R.S. § 12–2506; *see also Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 507–08, 917 P.2d 222, 236–37 (1996) (citations omitted). Thus, under A.R.S. § 12–2506(B), recovery on a claim or settlement of a claim against one tortfeasor does not make an injured plaintiff whole if there are other tortfeasors. The dissent's assertion that UCATA is not applicable is based on the assumption that the State is wholly responsible for plaintiff's injuries. However, we have concluded that there is an issue of fact with respect to the City's liability.

¶ 26  Second, the dissent would hold that "[t]he existence of a legal duty is dictated by the legal right to control rather than the exercise of control." Dissent at ¶ 30. Under this theory, the City (or any other entity) cannot be held liable for an accident on a state route even though it exercised control over the state route, because it did not have "legal control" over the state route. We believe such an approach overlooks the factual realities such as those presented in this case and unduly restricts the class of those having "legal control" only to those who are expressly granted control by statutory or intergovernmental contractual provisions. *See* A.R.S. § 11–952. Under the dissent's view, we again note that under UCATA, the State could, in such a case, name the entity exercising control as a nonparty at fault and reduce its liability, conceivably to nothing, foreclosing injured plaintiffs from any recovery from the entities who had negligently exercised total or partial control over the road.

¶ 27  In support of its argument, the dissent relies on the court of appeals' *Martinez* case, which we have previously cited. The dissent argues that *Martinez* does not support a claim against a governmental entity exercising control over a roadway over which the entity has no formal, legal right of control. We adhere to our reading of *Martinez.* It reversed a directed verdict in favor of the county because the county assumed and exercised control over a road on private proper-

ty that had originally been created by the State.[3]

¶ 28 We believe *Martinez* supports our conclusion that a governmental entity which exercises control over a roadway, even though it has no statutory or express contractual right of or duty to control the roadway may, in appropriate circumstances, be held liable for negligence in the exercise of that control. This assures that those entities which have been negligent cannot avoid liability for their actions by passing on those costs to entities that have legal control. This conclusion also assures that negligently injured plaintiffs are not left without a remedy against those who have negligently exercised control over public roads.

## DISPOSITION

¶ 29 That portion of the opinion of the court of appeals dealing with the City's duty is vacated, and the summary judgment of the superior court is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

ZLAKET, C.J., and JONES, V.C.J., concur.

FELDMAN, J., recused himself and did not participate in the determination of this case.

MARTONE, Justice, dissenting.

¶ 30 Until today, absent an intergovernmental agreement to the contrary, Arizona law imposed exclusive liability on the state for state highways. I would not change existing law to impose liability on the city for a road that is not its own. The existence of a legal duty is dictated by the legal right to control rather than the exercise of control. In this case, only the state had the legal right to control. The state thus has the legal duty. While the state and the city could have entered into an agreement to give the city the legal right to control, no such agreement was ever made. By allowing the existence of a legal duty to be driven by a fact specific inquiry into the exercise of control, we lose predictability and certainty in the law without any countervailing benefit to an injured party.

¶ 31 The injured party already has a cause of action against the state for conditions on a state road. Under the majority approach, which looks to the issue of control or amount of control, rather than the legal right to control, the answer to the question of whether one entity has any liability for circumstances on another entity's road will be "it depends upon the facts." But existing law ties the existence of a legal duty to the legal right to control, so that the answer to the question is predictable and certain—the state is responsible for state roads unless otherwise prescribed by an express intergovernmental agreement which did not exist here.

¶ 32 Under existing statutes and cases, both the trial court and the court of appeals correctly applied our law in granting and affirming summary judgment in favor of the city. Absent an intergovernmental agreement that provides otherwise, state highways are the exclusive responsibility of the state. A.R.S. §§ 28–104(A), 28–108(A)(18), and 28–108(A)(19). In *Harlan v. City of Tucson*, 82 Ariz. 111, 309 P.2d 244 (1957), we held that a city does not have a duty in tort when it does not have·jurisdiction or the legal right to control a dangerous condition on a roadway. *Harlan* cannot be distinguished from this case and, while the majority discusses it, it just rejects it without offering sufficient reasons to do so. *Ante*, at ¶ 20.

¶ 33 Under the intergovernmental agreement that did exist between the city and the state, the state is responsible for the construction of betterments. Traffic signals were specifically addressed—they would "be covered by separate agreement." But the city and the state never entered into any such agreement.

¶ 34 How then does the majority reach the conclusion that summary judgment was inappropriate? It first states that a municipality owes a duty to the public to keep its

---

**3.** *Martinez* went on to reverse a summary judgment for the State, ruling that whether the State could be held liable for its failure to warn, on its State-controlled road, of the upcoming danger on the county-controlled road was a question for the jury. 177 Ariz. at 272, 866 P.2d at 1358.

streets safe. *Ante,* at ¶ 10. But this is not in dispute. This was not a city street. It then says that if a city exercises control over a roadway it owes a duty. *Id.* But the case the *majority* (*compare ante,* at ¶ 10 *with ante,* at ¶ 27) cites in support of this proposition, *Martinez v. State,* 177 Ariz. 270, 866 P.2d 1356 (App.1993), had nothing to do with conditions on a road owned by the state. In *Martinez,* the county was held liable for conditions on a private citizen's land where the county used that land for a county road. Obviously the county should be liable for a county road that it places over private property. But here, the city did not place its road over state property. This is a state road and under our statutes, the state has exclusive legal responsibility for it. Finally, the majority says that the issue of control is a question of fact for the jury. *Ante,* at ¶ 10. But the issue is the legal right to control, not the exercise of control. The majority thus reaches its conclusion by assuming its validity.

¶ 35 That portion of the intergovernmental agreement cited by the majority, and characterized by Sanchez as a "joint improvement" agreement, *ante,* at ¶ 16, does not impose a legal obligation on the city to install a traffic light. It just candidly acknowledges that the city and the state did not address the issue and it would be the subject of future negotiation which never occurred. The fact that the state was willing to grant consent to the city to install a light when a developer would pay for it does not alter the fact that the state was ultimately responsible. The city had no duty to put the light up once the developer's funds disappeared. That duty, and the financial obligation that flowed from it, was always the state's.

¶ 36 The majority's reference to UCATA begs the question. UCATA only applies when a party is at fault. The City of Tucson cannot be a nonparty at fault under UCATA because under that act "'fault' means an actual breach of a legal duty," A.R.S. § 12–2506(F)(2). Under *Harlan,* the city is not a tortfeasor because it owes no legal duty to the plaintiff to erect a traffic signal. Therefore, the state could not name the city as a nonparty at fault because the state would be 100% liable for the injury caused by its conduct. Thus the majority's hypothetical that the state could name the city as a nonparty at fault and reduce its liability to nothing, *ante,* at ¶ 26, evaporates.

¶ 37 Until now, our law in this area was clear. Absent express agreements to the contrary, the state was responsible for state highways, the county was responsible for county highways, and the city was responsible for city roads. But today, an entity might become liable for some other entity's highway even when it is the financial obligation of the other entity to improve the road. In *Harlan,* we understood this to be bad public policy. We said:

> [I]n weighing the various policies involved in the construction of state highways, our legislature ... felt that the duty to the traveling public could best be served ... by placing exclusive control in one agency, the state highway department, rather than having a dual control within city limits where conflicting policies and divided responsibility could possibly retard their optimum development.

*Harlan,* 82 Ariz. at 119, 309 P.2d at 250.

¶ 38 Because I believe that *Harlan* continues to express a proper understanding of a legislative allocation of legal responsibility, I respectfully dissent.